No. 23-2478

# In the United States Court of Appeals for the Seventh Circuit

---

KEVIN JOHNSON

*Plaintiff-Appellant,*

v.

MARTIN PURDUE, et al.,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Southern District of Indiana
No. 1:21-cv-201 (Hon. Jane Magnus-Stinson)

---

## APPELLANT'S APPENDIX

---

Samuel Weiss
D Dangaran
RIGHTS BEHIND BARS
416 Florida Ave., N.W.
Washington, DC 20001
(202) 455-4399
sam@rightsbehindbars.org

*Counsel for Kevin Johnson*

March 22, 2024

**ATTORNEY STATEMENT**

I hereby certify that all of the materials required by FRAP 30 and Circuit Rule 30 parts (a) and (b) are included in this appendix. The final order on appeal, Trial Dkt. 129, has also been submitted attached to the opening brief pursuant to Circuit Rule 30.

Date: March 22, 2024

/s/ D Dangaran

D Dangaran
RIGHTS BEHIND BARS
416 Florida Avenue NW #26152
Washington, D.C. 20001
*Counsel for Appellant Kevin Johnson*

# INDEX

| Trial Dkt. # | Document | AA Page # |
|---|---|---|
| 144 | Order Denying Motion to Vacate (filed Oct. 2, 2023) | 4-6 |
| 140 | State Defendants Response in Opposition to Motion to Vacate (filed July 31, 2023) | 7-11 |
| 138 | Medical Defendants' Response in Opposition to Plaintiff's Motion to Vacate Judgment (filed July 31, 2023) | 12-15 |
| 134 | Motion to Vacate Order and Judgment Granting Defendants' Summary Judgment Motions and Dismissing this Action (filed July 17, 2023) | 16-17 |
| 129 | Order Granting Defendants' Motions for Summary Judgment (filed June 22, 2023) | 18-30 |
| 121 | Order Denying Motions for Summary Judgment Without Prejudice and Directing Further Proceedings (filed Jan. 19, 2023) | 31-32 |
| 117 | Mail returned as undeliverable (filed Dec. 1, 2022) | 33 |
| 120 | Mail returned as undeliverable, refused, unable to forward (Dec. 27, 2022) | 34 |
| 69 | Order Discussing Notice of Mail Seized (filed Oct. 5, 2021) | 35-36 |
| 67, 67-1 | Notice from Plaintiff of Mail Seized (filed Sept. 16, 2021) | 37-38 |
| 62 | Supplemental Response in Opposition to Motion for Intervention and for Hearing (filed Aug. 18, 2021) | 39-40 |
| 60 | Response in Opposition to Motion for Intervention and for Hearing (filed Aug. 16, 2021) | 41-43 |
| 59 | Motion for Intervention and for Hearing (filed August 2, 2021) | 44-47 |
| 56 | Notice of Change of Address and Notice of Loss of Property (filed July 26, 2021) | 48-51 |
| 20 | Screening Order (filed April 22, 2021) | 52-55 |
| 2 | Entry Severing Claims into Separate Action | 56-58 |
| 1, 1-1 | Complaint and Exhibit A (filed Jan. 25, 2021) | 59-90 |
| 135 | Notice of Appeal (filed July 27, 2023) | 91 |
| | Docket Sheet | 92-105 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KEVIN JOHNSON,                       )
                                     )
              Plaintiff,             )
                                     )
       v.                            )        No. 1:21-cv-00201-JMS-MG
                                     )
MARTIN PURDUE, et al.,               )
                                     )
              Defendants.            )

**Order Denying Motion to Vacate**

Plaintiff Kevin Johnson's claims in this case are that he received inadequate mental health and dental care while he was confined at Wabash Valley Correctional Facility. The defendants initially moved for summary judgment in April and May of 2022. When Mr. Johnson did not respond to those motions, the Court noted that Mr. Johnson had filed a notice indicating that he had not received the defendants' summary judgment materials. The Court therefore directed the defendants to re-file their summary judgment motions and gave them a deadline to do so. The Court further directed Mr. Johnson to file a motion with the Court if he wished to ask the Court to take any particular action in the case. Dkt. 121. The defendants refiled their motions on January 19 and January 31, 2023. Dkt. 122, 126. Five months passed with no filing from Mr. Johnson and the Court then granted the motions for summary judgment on June 22, 2023. Dkt. 129.

Mr. Johnson then filed a motion to vacate on July 17, 2023, within 28 days of the date judgment was entered in this action. It is therefore treated as a motion to amend judgment pursuant to Rule 59 of the *Federal Rules of Civil Procedure.* Rule 59(e) allows a court to amend a judgment only if the movant can "demonstrate a manifest error of law or fact or present newly discovered evidence." *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 505–06 (7th Cir. 2016) (internal

AA-4

citations omitted).  A "manifest error" means "the district court commits a wholesale disregard, misapplication, or failure to recognize controlling precedent."  *Stragapede v. City of Evanston, Illinois,* 865 F.3d 861, 868 (7th Cir. 2017) (internal quotation omitted).  "A manifest error is not demonstrated by the disappointment of the losing party." *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (internal quotations omitted). Relief through a Rule 59(e) motion for reconsideration is an "extraordinary remed[y] reserved for the exceptional case."  *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

In support of his motion to vacate, Mr. Johnson contends that he never received the defendants' summary judgment motions, and this is why he did not respond to them. Dkt. 134. But he admits that he did receive the Court's order denying the previous motions for summary judgment and providing the defendants a deadline to re-submit their motions. Thus, while Mr. Johnson states that he did not receive the defendants' filings, he had notice that they should be filed promptly and that he should file a motion if he needed the Court to take a requested action, such as sending him a docket sheet or directing re-service of the summary judgment motions. But he did nothing to ensure he had received everything that had been filed. Moreover, Mr. Johnson's motion to vacate identifies no error of law or fact in the Court's ruling.

Because Mr. Johnson has identified no error in the Court's order granting the defendants' motions for summary judgment, his motion to vacate, dkt. [134], is **DENIED**.

**IT IS SO ORDERED.**

Date: 10/2/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

AA-5

Distribution:

KEVIN JOHNSON
1007485
Va DOC Central Mail Distribution Center
3521 Woods Way
State Farm, VA 23160

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Erica Lee Sawyer
INDIANA ATTORNEY GENERAL
Erica.Sawyer@atg.in.gov

AA-6

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **KEVIN JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 1:21-cv-201-JMS-MG** |
| | ) | |
| **JOHN PURDUE,** *et. al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

### STATE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE JUDGMENT

Comes now the State Defendants, former commissioner Robert Carter and Warden Dushan Zatecky, by counsel, for their Response in Opposition to Plaintiff's Motion to Vacate Judgment, and request the Court deny the same.

### PROCEDURAL HISTORY

On April 14, 2022, State Defendants filed their Motion for Summary Judgment, Memorandum, and Notice, and served a copy to Plaintiff's address on the docket. [Dkt. 94-96]. The Motion for Summary Judgment and related filings were not returned as undeliverable. Plaintiff filed a Notice of Change of Address on October 17, 2022. [Dkt. 114]. On October 24, 2022, Plaintiff filed a Notice to the Court, stating that he had not received a copy of either Defendants' Motion for Summary Judgment. [Dkt. 115]. Accordingly, on January 19, 2023, this Court denied State Defendants' Motion for Summary Judgment without prejudice, granting them leave to re-file the Motion by February 2, 2023, and granting Plaintiff 28 days from the date of service to respond. [Dkt. 121]. Plaintiff admits that he received this Order. [Dkt. 134 at ¶ 2]. State Defendants re-filed their Motion for Summary Judgment on January 31, 2023, and served it on that date to the

address in the Distribution list of the Court's Order. [Dkt. 121, 126-128]. The Motion for Summary

Judgment and related filings were not returned as undeliverable.

Plaintiff did not respond to Medical Defendants' Motion for Summary Judgment, nor did

he submit any other filings to the Court, or send any correspondence to undersigned counsel. On

June 22, 2023, this Court granted State Defendants' Motion for Summary Judgment. [Dkt. 129].

On July 10, 2022, within 18 days of the Court's Order on the Motions for Summary Judgment,

Plaintiff filed his Motion for Contempt Proceedings and Court Intervention [Dkt. 132], as well as

his Motion to Vacate Order and Judgment Granting Defendants' Summary Judgment Motions and

Dismissing this Action [Dkt. 134].

**ARGUMENT**

This Court should deny Plaintiff's Motion to Vacate Order and Judgment. If his motion is

construed as a Federal Rule of Civil Procedure 59(e) motion, he fails to meet his burden. Plaintiff

has demonstrated that he is able to receive Orders and send mail from his current institution, and

was aware of the Defendants' new deadline to re-file their motions for summary judgment.  Lastly,

Defendants would be prejudiced if Plaintiff were granted a third opportunity to respond.

"Federal Rule of Civil Procedure 59(e) allows a litigant to file a motion to alter or amend

a district court's judgment", enabling a district court to "'rectify its own mistakes in the period

immediately following' its decision, but not to address new arguments or evidence that the moving

party could have raised before the decision." *Banister v. Davis*, 140 S. Ct. 1698, 1700 (2020)

(internal citations omitted). Relief under Rule 59(e) is an "extraordinary remed[y] reserved for the

exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

To prevail on a Fed. R. Civ. P. 59(e) motion, the movant must clearly show "(1) that the

court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded

2

entry of judgment." *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.,* 733 F.3d 761, 770 (7th Cir. 2013). A "manifest error" means the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000). "[A] Rule 59 motion is not a forum to relitigate losing arguments". *Ohr ex rel. Nat'l Lab. Rels. Bd. v. Latino Exp., Inc.,* 776 F.3d 469, 478 (7th Cir. 2015).

Plaintiff's Motion does not request reconsideration based on any newly discovered evidence; therefore, he must establish this Court committed a manifest error in law or fact in rendering judgment in favor of Defendants. *Edgewood Manor,* 733 F.3d at 770. Plaintiff has not established, nor argued, a manifest error in law. Plaintiff's Motion to Vacate rests on his claims that he did not receive any summary judgment motion and that he should be afforded a fair and full opportunity to review and respond to it. [Dkt. 134].

However, Plaintiff has demonstrated that he is able to receive mail at his current institution, evidenced by his admission that he received two Court orders. He has also demonstrated his ability to send mail, as evidenced by his Notice of Change of Address and his recent flurry of filings. Plaintiff does not explain why he is able to receive certain forms of legal mail, but not others. Also, Plaintiff acknowledges he received the Court Order setting the new deadline for Defendants to re-file their summary judgment motions. [Dkt. 134 at ¶ 2]. This Order set the new deadline for parties to file their summary judgment motions to be February 2, 2023. [Dkt. 121]. This date came and went, and Plaintiff did not file anything with the Court until the recent order granting summary judgment in Defendants' favor. Plaintiff has had a fair and full opportunity to review and respond to State Defendants' Summary Judgment Motion.

Lastly, State Defendants will be prejudiced if Plaintiff were granted a third opportunity to respond. State Defendants have complied with this Court's Orders and have served Plaintiff two

AA-9

copies of their Motion for Summary Judgment at two separate facilities. This case has been pending since January of 2021, and State Defendants first filed for summary judgment on April 14, 2022. Further extensions without good cause, after this Court has made a decision on the merits, will only serve to prejudice Defendants and waste judicial resources. State Defendants should not be subjected to further litigation due to Plaintiff's failure to litigate his case.

## CONCLUSION

State Defendants, former commissioner Robert Carter and Warden Dushan Zatecky, respectfully request the Court deny Plaintiff's Motion to Vacate Order and Judgment.

Respectfully Submitted,

THEORDORE E. ROKITA
Attorney General of Indiana
Attorney No.: 18857-49

Date:   <u>July 31, 2023</u>                    By:     <u>/s/ Erica L. Sawyer</u>
                                                        Erica L. Sawyer
                                                        Deputy Attorney General
                                                        Attorney No. 35243-49

OFFICE OF ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 232-6286
Fax: (317) 232-7979
Email: Erica.Sawyer@atg.in.gov

AA-10

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  I further certify that on July 31, 2023, I mailed, by United States Postal Service, first-class postage prepaid, the document to the following non CM/ECF participants:

Kevin Johnson
DOC 1007485
Va DOC Central Mail Distribution Center
3521 Woods Way
State Farm, VA 23160

Erica L. Sawyer
Deputy Attorney General

AA-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KEVIN JOHNSON,                      )
                                   )
            Plaintiff,             )
                                   )
      v.                           )        No. 1:21-cv-00201-JMS-MG
                                   )
JOHN PURDUE, *et al.*              )
                                   )
            Defendants.            )

## MEDICAL DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE JUDGMENT

NOW COME the Medical Defendants, CIEMONE EASTER-ROSE, PHD, HSPP, DAWN INGALLS, DA, GREGG NOLL, DDS, PATRICIA NORTHCUTT, BHS, MARTIN PERDUE, LSW, AND WEXFORD OF INDIANA, LLC, by their attorney SARAH J. SHORES-SCISNEY of STOLL KEENON OGDEN PLLC, and for their Response in Opposition to Plaintiffs Motion to Vacate Judgment, state the following:

## I.       PROCEDURAL HISTORY

On June 2, 2022, Medical Defendants filed their Motion for Summary Judgment, serving a copy to Plaintiff's last known address. [D/N 105]. The Motion for Summary Judgment was not returned to Medical Defendants as undeliverable. Plaintiff filed a Notice of Change of Address on October 17, 2022. [D/N 114]. On October 24, 2022, Plaintiff filed a Notice to the Court, stating that he had not received a copy of Medical Defendants' Motion for Summary Judgment. [D/N 115]. Medical Defendants did not send Plaintiff another copy of their Motion for Summary Judgment. As such, on January 19, 2023, this Court denied Medical Defendants' Motion for Summary Judgment without prejudice, granting them leave to re-file the Motion by February 2,

AA-12

2023, and granting Plaintiff 28 days from the date of service to respond. [D/N 121]. Plaintiff admits that he received this Order. [D/N 134 at ¶ 2]. Medical Defendants re-filed their Motion for Summary Judgment on January 19, 2023, and served it on that date to the address in the Distribution list of the Court's Order. [D/N 121, 122]. The Motion for Summary Judgment was not returned to Medical Defendants as undeliverable. Plaintiff did not respond to Medical Defendants' Motion for Summary Judgment, nor did he submit any other filings to the Court, or send any correspondence to undersigned counsel. On June 22, 2023, this Court granted Medical Defendants' Motion for Summary Judgment. [D/N 129]. On July 10, 2022, within 18 days of the Court's Order on the Motions for Summary Judgment, Plaintiff filed his Motion for Contempt Proceedings and Court Intervention (D/N 132), as well as his Motion to Vacate Order and Judgment Granting Defendants' Summary Judgment Motions and Dismissing this Action (D/N 134).

## II.    ARGUMENT

This Court should deny Plaintiff's Motion to Vacate Order and Judgment. First, Plaintiff has demonstrated his ability to promptly receive mail at his current institution, as evidenced by his admission that he received two Court orders, and has also demonstrated his ability to send mail, as evidenced by his ability to file his Notice of Change of Address and his most recent Motions. It seems questionable that certain legal mail gets through to him, just not Defendants' Motions for Summary Judgment. Additionally, while Plaintiff alleges that he has been denied all of his legal property since June 30, 2022, this case was already closed by then, so that would not have affected his ability to litigate this case.

Second, Plaintiff was aware of Defendants' deadline to re-file their Motions for Summary Judgment, yet did not reach out to the Court, nor defense counsel, when that deadline came and

went without receiving them. Notably, he has not made any filing nor taken any action since notifying the Court of his new address in October 2022 and alleging that he had not received Defendants' originally filed Motions for Summary Judgment.

Finally, Medical Defendants would be prejudiced if Plaintiff were granted a third opportunity to respond. Medical Defendants have complied with this Court's Orders and have now served Plaintiff two copies of their Motion for Summary Judgment at two separate facilities. This case was filed in January of 2021, and remained pending against Defendants for over 2 years. If this case were reopened now and summary judgment briefing resumed, it would likely be another two years before a trial was held, should this case survive summary judgment based on Plaintiff's Response. Defendants should not be subjected to further litigation and further threat to their professional licenses due to Plaintiff's repeated failure to litigate his case.

WHEREFORE, the Defendants, Ciemone Easter-Rose, PhD, HSPP, Dawn Ingalls, DA, Gregg Noll, DDS, Patricia Northcutt, BHS, Martin Perdue, LSW, and Wexford of Indiana, LLC, respectfully request that this Court deny Plaintiff's Motion to Vacate Order and Judgment.

Respectfully submitted,

STOLL KEENON OGDEN PLLC


/s/ Sarah J. Shores-Scisney
Sarah J. Shores-Scisney, Attorney No. 35746-49
Douglass R. Bitner, Attorney No. 34981-49
**STOLL KEENON OGDEN PLLC**
The Emelie Building
334 N. Senate Avenue
Indianapolis, IN 46204
Office (317) 464-1100; Fax (317) 464-1111
Sarah.Shores@skofirm.com
Doug.Bitner@skofirm.com
*Counsel for Medical Defendants*

AA-14

## CERTIFICATE OF SERVICE

I certify that on **July 31, 2023**, a copy of the foregoing ***Response in Opposition to Plaintiff's Motion to Vacate*** was filed electronically using the Court's electronic filing system (CM/ECF). Notice of this filing was electronically served via CM/ECF upon the following person(s):

Erica L. Sawyer
**INDIANA ATTORNEY GENERAL'S OFFICE**
Erica.Sawyer@atg.in.gov

I certify a copy of the foregoing was sent via U.S. First Class Mail to the following person(s):

Kevin Johnson (#1007485)
**VA DOC CENTRAL MAIL DISTRIBUTION CENTER**
Inmate Mail/Parcels
3521 Woods Way
State Farm, VA 23160
***PRO SE***

*/s/Sarah J. Shores-Scisney*
Sarah J. Shores-Scisney

AA-15

**FILED**

07/17/2023

**U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**Roger A.G. Sharpe, Clerk**

IN THE U.S. DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KEVIN JOHNSON,
plaintiff,
v.  Case no. 1:21-cv-00201-JMS-MG
MARTIN PURDUE., et al.,
defendants.

MOTION TO VACATE ORDER AND JUDGMENT GRANTING DEFENDANTS' SUMMARY
JUDGMENT MOTIONS AND DISMISSING THIS ACTION

Plaintiff pro se hereby moves this Court to vacate as void it's June 22, 2023 ruling and
judgment granting defendants' summary judgment motions and dismissing this action
because:

1. On June 22, 2023 this court ruled and entered a final judgment granting defendants'
summary judgment motions and dismissing plaintiff's action finding that plaintiff never replied
to those summary judgment motions and he didn't submit any motions indicating any inability
to reply to said motions.

2. Plaintiff submits that he never received defendants' summary judgment motions, this is
why he did not respond to them nor submit any motions indicating inability to respond.
Plaintiff did receive a prior order from the court conditionally denying previous summary
judgment motions submitted by defendants based upon plaintiff's not receiving those prior
filings. In that order the court directed defendants to refile those prior summary judgment
motions. However, plaintiff did not receive any such refiled motions from defendants, which is
why he never replied to them and didn't submit any motions indicating his inability to respond.

3. Plaintiff submits that he has been met with repeated obstacles to pursuing this and other
court actions since returning to the Virginia Department of Corrections (VDOC) in 2021,
including the VDOC's not delivering mail sent to him from numerous courts and defense
counsels in his active cases, and/or delivering such mail to him weeks to months after it has
been mailed to him. In most of those cases he never received notice from the VDOC that
mailings were not delivered to him nor the reasons for the denied or delayed deliveries. This
has occurred numerous times with mail related to this very case. This court can take judicial
notice in this instant case and its sister proceeding, case #2:20-cv-602-MPB-MJD, of the
many mailings sent to plaintiff by this court having been returned by the VDOC as
undeliverable to plaintiff without prior notice or explanation to plaintiff that such mail was not
delivered to him or why.

4. Other obstructions by VDOC officials to his ability to litigate this action, which are ongoing,
include denials of his access to and use of law libraries at VDOC facilities where he has been
housed, denying him the ability to perform basic legal research; and the taking and denial of

AA-16

access to all of his personal legal property which includes his records of this case, his work product materials, his evidence, stationery, and all other materials relevant to this action. Indeed he has now been denied all of his legal property since June 30, 2023, which is a recurring problem. Plaintiff has now been forced to submit this instant motion and others filed herewith through outside persons electronically filing them because of the present denial of access to all of his property and stationery - see his MOTION FOR CONTEMPT PROCEEDINGS AND COURT INTERVENTION submitted herewith and incorporated by reference.

Plaintiff swears to the truth of the foregoing facts under penalty of perjury.

ARGUMENT

Summary judgment motions are dispositive motions that opposing parties must be afforded a full and fair opportunity to review and respond to. Under the due process clause of the 5th Amendment a civil cause of action is a property interest that cannot be dismissed without plaintiff's notice and opportunity for a hearing appropriate to the nature of the case. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982). The grant of summary judgment against plaintiff when he never received the summary judgment motions and was thus prevented from responding to them was a denial of the basic due process right to notice and the opportunity to be heard. The dismissal judgment entered without due process is void and must be vacated. Where a judgment is void relief is mandatory not discretionary. (1)

THEREFORE this court should vacate its June 22, 2023 ruling and judgment granting the defendants' summary judgment motions and dismissing this action and it should reinstate this case to the court's active docket and adjust the proceedings and grant plaintiff such further relief as it finds fair and just

Respectfully submitted,

Kevin Johnson

_____
Signature

Reply to:
Kevin Johnson, No. 1007485
VDOC Central Mail Distribution Center
3521 Woods Way
State Farm, VA 23160

_____
1. Because of being denied access to his legal property and legal research avenues as set out in paragraph 4 above, plaintiff is unable to fully brief this motion and cite authorities in support of his arguments.

AA-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEVIN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00201-JMS-MG |
| | ) | |
| MARTIN PURDUE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Kevin Johnson filed this lawsuit when he was confined at Wabash Valley Correctional Facility alleging that he has received inadequate mental health and dental care. The defendants have moved for summary judgment and Mr. Johnson has not responded.[1] For the reasons below, the motions are **GRANTED**.

**I.**
**Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving

---

[1] On January 19, 2023, based on Mr. Johnson's filing stating that he had not received the defendants' summary judgment motions, the Court directed the defendants to re-file and re-serve those motions. Dkt. 121. The Court further encouraged Mr. Johnson to file a motion if he needed to request the Court to take any action in this case. *Id.* The defendants did re-file their summary judgment motions, and Mr. Johnson did not respond or otherwise submit anything to the Court indicating any difficulty in receiving his mail or responding to the motions.

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

In this case, the defendants have met that burden through their unopposed motions for summary judgment. Mr. Johnson failed to respond to the summary judgment motions. Accordingly, facts alleged in the motions are "admitted without controversy" so long as support for them exists in the record. *See* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion

for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

### A. The Parties

At all relevant times, Mr. Johnson was incarcerated by the Indiana Department of Correction ("IDOC") at Pendleton Correctional Facility ("PCF"). Dkt. 1 at 1. He was housed in a restricted housing unit based on conduct reports, among other things. Dkt. 124-4 ¶ 6.

Commissioner Carter is the Commissioner of the IDOC. Dkt. 126-1 at 93:3-5. Warden Zatecky was the Warden at PCF. *Id.* at 93:3-5. The IDOC contracts with medical providers to administer medical care to inmates within IDOC facilities, but neither Commissioner Carter nor Warden Zatecky decide the course of treatment. Dkt. 126-2 ¶¶ 5-6; dkt. 126-3 ¶¶ 5, 6, 9. At the time of Mr. Johnson's allegations, the IDOC contracted with defendant Wexford of Indiana, LLC, to provide medical and dental care.

Gregg Noll is a dentist who worked at PCF during the relevant time. Dkt. 124-1 ¶¶ 1-2. During this time, he was the only onsite dental provider for around 1800 inmates. *Id.* ¶ 7. He provided overall supervision to the dental department and preventative and restorative treatment to inmates. *Id.* But he was not responsible for scheduling appointments because he does not directly receive Health Care Request Forms. *Id.* ¶ 14. Instead, medical administrative staff received Health Care Request Forms and facilitated responses and scheduled appointment when necessary. *Id.*

Dental Assistant Denise Ingalls is a certified dental radiographer. Dkt. 124-1 ¶ 6. She works under Dr. Noll's supervision and is responsible for assisting during examination and treatment. *Id.*

Ciemone Rose worked as a psychologist at PCF during the relevant time. Dkt. 124-4 ¶ 1-2. Patricia Northcutt and Martin Perdue were mental health staff at PCF. *Id.* ¶ 7.

### B. Mr. Johnson's Dental Care

Dr. Noll saw Mr. Johnson on March 28, 2019, after he submitted a Health Care Request Form complaining of tooth pain. Dkt. 124-2 at 2. By the time of the visit, the pain had stopped. *Id.* Dr. Noll identified no cavities or periodontal problems and did not recommend treatment. *Id.*

Dr. Noll saw Mr. Johnson again about 6 weeks later after he complained that a crown had come off of tooth #9. *Id.* at 2-3. Dr. Noll noted that Mr. Johnson had worn through the crown by grinding his teeth. *Id.* Dr. Noll filled a cavity on that tooth and replaced the crown. *Id.*

On December 23, 2019, Dr. Noll saw Mr. Johnson after he submitted a Health Care Request stating that he had lost a filling in tooth #27 and was experiencing cold sensitivity. *Id.* at 3. The are many reasons why a filling may break or fall out, including seal failure, severe tooth decay, or pressure from chewing or grinding. Dkt. 124-1 ¶ 18. Dr. Noll removed decay and restored the tooth with resin. Dkt. 124-2 at 3.

Dr. Noll saw Mr. Johnson again regarding the filling in tooth #27 on February 20, 2020. Dkt. 124-2 at 4. Decay was removed and resin was restored. *Id.* Dental Assistant Ingalls placed a new filling, taking care to try to keep it as dry as possible "given the old moist airlines." *Id.*

The dental air compressor machine compresses, cleans, dries, and stores air to power handpieces to clean and treat patient's teeth. Dkt. 124-1 ¶ 27. As part of Dr. Noll's practice, he regularly uses the airlines to keep preparation of fillings dry. *Id.* ¶ 28. It is Dr. Noll's understanding that Wexford works with the IDOC to maintain dental equipment, including the air lines. *Id.* ¶ 26. Dr. Noll ensured to the best of his ability that the moisture was removed from the dental air lines in filling Mr. Johnson's cavities. *Id.* ¶ 30.

Commissioner Carter is not aware of issues with dental equipment, nor is that something he would normally be aware of. Dkt. 126-2 ¶ 10. Warden Zatecky's knowledge of allegedly

deficient dental equipment is limited to his response to a grievance appeal filed by Mr. Johnson. Dkt. 126-3 ¶ 10; dkt. 126-4. The response to the grievance states that medical was contacted, that medical staff monitored and treated Mr. Johnson, and that the resin did not dry properly but was replaced. Dkt. 126-4. Warden Zatecky is not a medical professional and does not have the ability to order specific treatment. Dkt. 126-3 ¶ 9.

### C. Mr. Johnson's Mental Health Care

Mr. Johnson was evaluated at Reception Diagnostic Center ("RDC") on January 15, 2019, and was found to be free of mental illness. Dkt. 124-3 at 3-4 (Medical Records). He was transferred to PCF on January 22, and Dr. Rose met with him at his cell to discuss his claims that he lied during his intake at RDC when he stated he did not have any mental health concerns because he was not able to have a private meeting with Mental Health Services. Dkt. 124-4 at ¶ 16; dkt. 124-3 at 1. Mr. Johnson reported to Dr. Rose that he has a history of mental health concerns including PTSD. Dkt. 124-3 at 1. Dr. Rose then reviewed Mr. Johnson's chart and medical records, which showed that he did refuse to cooperate with mental health intake at the RDC because of the presence of custody staff, and that no mental health concerns were noted. *Id.* His current complaint was that he was asked to sign a "Consent for Treatment and Limits of Confidentiality Form" to receive mental health services. *Id.*

Dr. Rose explained the purpose of the consent form to Mr. Johnson. Dkt. 124-4 ¶ 17. Specifically, the IDOC Health Care Services Directive ("HSCD") requires mental health providers to obtain informed consent by completing the consent form before undertaking any therapeutic intervention other than in an emergency. Dkt. 124-5 at 10. The form states:

> Mental Health Services Staff provide counseling and psychological evaluations for offenders in this facility. The mental health staff wants you to feel comfortable in discussing your personal concerns with them, but you need to be aware of special situations in which confidentiality will be limited.

AA-22

> Security and safety are very important in jails and prisons. To ensure the safety of everyone, mental health staff must report situations which could be harmful to yourself or others, or a threat to the orderly operation of the facility.

Dkt. 124-6 (Mental Health Services Consent for Treatment). The HCSD further requires that mental health providers inform inmates, in writing, of the limits of confidentiality at the initiation of mental health treatment. Dkt. 124-5 at 3. The HSDC provides: "[W]ithin correctional settings, privacy requirements and security requirements may conflict when health care activities are being performed. It is necessary to provide respect and privacy when that can be accomplished without placing the provider or others at risk. **Security remains paramount**." Dkt. 124-7 at 1 (HCSD-Privacy of Care) (emphasis in original). In other words, the HCSD required mental health providers to use the consent form when treating IDOC inmates. Mr. Johnson responded that he did not want to waive his confidentiality rights and felt that it was a violation of his HIPAA rights to require the consent form. Dkt. 124-4 ¶ 17.

Additionally, regardless of housing assignment, the HCSD provides that inmates must have access to mental health services necessary to screen, evaluate, and treat mental illness and that mental health services must be provided in a manner which provides confidentiality and physical protection for the staff. Dkt. 124-5 at 3. During their initial meeting, Dr. Rose therefore explained to Mr. Johnson that he would continue to be monitored by mental health staff in monthly cell-side rounds and he could submit a Health Care Request and sign a consent form to receive mental health services. Dkt. 124-4 ¶ 17.

While Mr. Johnson was in restricted housing during the time at issue, he received regular cell-front visits from mental health staff, including Ms. Northcutt and Mr. Perdue. *Id.* ¶ ¶ 18-20. During his time at PCF, Mr. Johnson was not diagnosed with a "serious mental illness." *Id.* ¶ 23, 26.

AA-23

**III.**
**Discussion**

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

For the purposes of this motion, the Court assumes that Mr. Johnson's dental issues and the need for mental health treatment constitute serious medical needs. To survive summary judgment then, Mr. Johnson must show that the defendants acted with deliberate indifference—that is, that he or she consciously disregarded a serious risk to his health. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Mr. Johnson "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id*. "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted). The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment decision is 'so far afield of accepted professional standards as to

AA-24

raise the inference that it was not actually based on a medical judgment.'" *Id.* (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Id.* at 241-42.

### A. Dental Care

First, Mr. Johnson claims that defendants Dr. Noll and Ms. Ingalls failed to provide necessary care for his dental pain. He further alleges that the prison's dental equipment was not working and that defendants Carter, Zatecky, and Wexford were aware of the faulty equipment and did not solve the problem.

#### 1. Dr. Noll and Dental Assistant Ingalls

Dr. Noll saw Mr. Johnson several times during his time at PCF. The first time, on March 28, 2019, Dr. Noll saw him after he had complained of pain. But the pain had since stopped and Dr. Noll did not identify any dental problems. Dkt. 124-2 at 2. Dr. Noll saw Mr. Johnson again about six weeks later, after his crown came off. *Id.* Dr. Noll filled a cavity and replaced the crown. *Id.* Dr. Noll next saw Mr. Johnson later that year after he submitted a Health Care Request stating that he had lost a filling and was experiencing cold sensitivity. Dr. Noll restored the tooth. *Id.* About two months later, Dr. Noll saw Mr. Johnson again regarding that filling. *Id.* Ms. Ingalls placed a new filling, taking care to try to keep it as dry as possible "given the old moist airlines." *Id.*

In other words, every time Dr. Noll or Ms. Ingalls saw Mr. Johnson for his dental concerns, they evaluated and treated him according to their evaluation. By failing to respond to the motion for summary judgment, Mr. Johnson has not pointed to evidence to dispute these facts. He has failed to raise an inference that either made any treatment decision that was "'so far afield of

8

AA-25

accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Dean*, 14 F.4th at 241. While there is evidence that Dr. Noll restored a filling in late 2019, and that filling failed just a short time later, that is not enough to show that Dr. Noll acted well outside professional standards. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("deliberate indifference entails something more than mere negligence").  In addition, while it was noted that care had to be taken to keep the tooth as dry as possible given the "old moist airlines," there is no evidence that Dr. Noll or Ms. Ingalls were responsible for those airlines, acted outside professional standards, or failed to attempt to keep the airlines dry when they restored Mr. Johnson's tooth. Dr. Noll and Ms. Ingalls are therefore entitled to summary judgment on Mr. Johnson's claim.

### 2. Wexford

Private corporations acting under color of state law—including those that contract with the state to provide essential services to prisoners—are treated as municipalities for purposes of Section 1983 and can be sued when their actions violate the Constitution. *Dean v. Wexford Health Sources, Inc*., 18 F.4th 214, 235 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978)). To succeed on a claim against a municipality, the plaintiff must identify an action taken by the municipality and allege a causal link between the municipality's action and the deprivation of federal rights. *Dean,* 18 F.4th at 235. "A municipality 'acts' through its written policies, widespread practices or customs, and the acts of a final decisionmaker." *Levy v. Marion Co. Sheriff*, 940 F.3d 1002, 1010 (7th Cir. 2019).

Liability may attach in two circumstances: First, "if an express municipal policy or affirmative municipal action is itself unconstitutional, . . . a plaintiff has a straightforward path to holding the municipality accountable . . . [and] a single instance of a constitutional violation caused by the policy suffices to establish municipal liability." *Taylor v. Hughes*, 26 F. 4th 419, 435 (7th

Cir. 2022) (cleaned up). Second, a plaintiff may show "gaps in express policies or . . . widespread practices that are not tethered to a particular written policy—situations in which a municipality has knowingly acquiesced in an unconstitutional result of what its express policies have left unsaid." *Id*. (cleaned up). Under this theory, a plaintiff "must typically point to evidence of a prior pattern of similar constitutional violations" to "ensure that there is a true municipal policy at issue, not a random event." *Id.* (cleaned up). In other words:

> a plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision. This requires more than a showing of one or two missteps. *Id.* [The Court looks] to see if a trier of fact could find systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system. And even if there are such deficiencies, a *Monell* claim can prevail only if a policy-making official knows about them and fails to correct them.

*Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (cleaned up).

Here, Wexford has presented evidence that it works with the IDOC to maintain dental equipment, dkt. 124-1 ¶ 26, and Mr. Johnson has failed to dispute this evidence. Further, because he did not respond to the motion for summary judgment, Mr. Johnson has pointed to no evidence of an express policy on Wexford's part of failing to repair the lines. In addition, he has presented no evidence to support a finding of a practice or custom of failing to maintain the equipment. There is no evidence that the presence of moisture in the dental clinic's airlines amounted to more than "one or two missteps" or that Wexford maintained such a "pervasive" practice of failure to maintain its equipment that would amount to a policy decision. *See Dixon*, 819 F.3d at 348. Accordingly, Wexford is entitled to summary judgment on Mr. Johnson's claims.

### 3. Commissioner Carter and Warden Zatecky

#### a. Commissioner Carter

Mr. Johnson sues Commissioner Carter based on his allegations that the dental equipment was faulty. But it is undisputed that Commissioner Carter had no knowledge or responsibility for the dental equipment. Dkt. 126-2 ¶ 10. He therefore was not personally responsible for any alleged faulty equipment and cannot be held liable under § 1983. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). ("Individual liability under § 1983 ... requires personal involvement in the alleged constitutional deprivation."). Mr. Carter is therefore entitled to summary judgment on Mr. Johnson's claims.

#### b. Warden Zatecky

Mr. Johnson similarly alleges that Warden Zatecky was responsible for the allegedly faulty dental equipment. It is undisputed that Warden Zatecky is not a medical professional and that his only involvement with the dental equipment was to respond to one grievance on this issue. Dkt. 126-3 ¶¶ 9, 10; dkt. 126-4. That grievance response indicated that medical staff were contacted and had been treating Mr. Johnson, that the filling did not dry properly, and that it was replaced. Dkt. 126-4 at 1.

"If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) (quoting *Greeno v. Daley*, 414 F.3d 645 at 656 (7th Cir. 2005)). That is what the undisputed evidence here shows – Warden Zatecky was aware of only one grievance regarding the dental equipment and was further aware that medical staff were treating Mr. Johnson. Accordingly, Warden Zatecky is entitled to summary judgment on Mr. Johnson's claims.

### B. Mental Health Care

Mr. Johnson also alleges that defendants Purdue, Rose, and Northcutt denied him necessary mental health care because of his refusal to sign a Wexford-required consent form.

It is undisputed that the HCSD requires that inmates seeking mental health care complete the Consent for Treatment and Limits of Confidentiality Form. Dkt. 124-5 at 10. This form discusses the limits of patient confidentiality in the prison setting. Dkt. 124-6. While Mr. Johnson did not want to complete this form, Dr. Rose explained to him that he could later submit a Health Care Request for mental health services and sign a Consent form, and that he would continue to be monitored by mental health staff in monthly cell-side rounds. Dkt. 124-4 ¶ 17. And he did receive regular cell-front visits from Ms. Northcutt and Mr. Perdue. *Id.* at ¶¶ 18-20. Notably, Mr. Johnson was not diagnosed with a serious mental illness during his time at PCF. *Id.* ¶¶ 23, 26.

It is undisputed that even though Mr. Johnson refused to sign a consent form for mental health treatment, he was regularly offered treatment and was not found to have a serious mental illness. By failing to respond to the motion for summary judgment, Mr. Johnson has failed to dispute these facts and therefore has not shown that any of the mental health providers disregarded his serious medical needs. Further, Mr. Johnson has also failed to point to any constitutional right to receive mental health treatment before agreeing to the consent form or that, if he signed the form, his constitutional rights would have been violated. *See Anderson v. Romero*, 72 F.3d 518, 523 (7th Cir. 1995) (not finding "any appellate holding that prisoners have a constitutional right to the confidentiality of their medical records" but noting that such an "action might conceivably constitute the infliction of cruel and unusual punishment" "if prison officials disseminated humiliating but penologically irrelevant details of a prisoner's medical history"); *cf. Carpenter v. Phillips*, 419 Fed. App'x 658, 659 (7th Cir. 2011) (HIPAA does not furnish a private right of

action). He therefore has failed to show that any of the defendants disregarded his need for mental health treatment. Accordingly, defendants Perdue, Rose, and Northcutt are entitled to summary judgment.

By failing to show that the consent form itself violated his rights or that any individual mental health provider was deliberately indifferent to Mr. Johnson's needs, Mr. Johnson has also failed to demonstrate a right to relief against Wexford. *See Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014) ("Wexford cannot be held liable for damages because there is no underlying constitutional violation.").

## IV.
## Conclusion

For the reasons discussed above, the defendants' motions for summary judgment, dkt. [122], and dkt. [126], are **GRANTED**. Final judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**


Date: 6/22/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana


Distribution:

KEVIN JOHNSON
1007485
Va DOC Central Mail Distribution Center
3521 Woods Way
State Farm, VA 23160


All Electronically Registered Counsel

AA-30

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KEVIN JOHNSON,                          )
                                        )
                    Plaintiff,          )
                                        )
          v.                            )          No. 1:21-cv-00201-JMS-MG
                                        )
MARTIN PURDUE, et al.,                  )
                                        )
                    Defendants.         )

**Order Denying Motions for Summary Judgment Without Prejudice
and Directing Further Proceedings**

Plaintiff Kevin Johnson's claims in this case are that he received inadequate mental health and dental care while he was confined at Wabash Valley Correctional Facility. The defendants have moved for summary judgment and Mr. Johnson has not responded. However, a review of the docket reveals that Mr. Johnson's address had changed and that he previously filed a "notice" indicating, among other things, that he had not received the summary judgment materials from the defendants. Dkt. 115. Mr. Johnson sought no relief in that filing and therefore no relief was ordered. In addition, the defendants did not act on Mr. Johnson's statements that he had not received their summary judgment motions or at least did not advise the Court if they did.

Rule 56(d) of the Federal Rules of Civil Procedure provides that if a nonmovant shows that he cannot present facts to oppose the motion for summary judgment, the Court may "defer considering the motion or deny it." Consistent with that Rule, the defendants' motions for summary judgment, dkt. [94], dkt. [105], are **denied without prejudice.** The defendants shall have **fourteen days** to refile their motions and re-serve them on Mr. Johnson at the address in the Distribution of this Order. Mr. Johnson will have 28 days after service of those motions to respond. In addition, if

AA-31

the defendants receive notification that the motions were not delivered to Mr. Johnson, they shall

notify the Court. Finally, in the future, if Mr. Johnson wishes to request that the Court take some

action in this case, he is encouraged to file a Motion rather than a Notice.

**IT IS SO ORDERED.**

Date: 1/19/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

KEVIN JOHNSON
1007485
VA DOC Central Mail Distribution Center
3521 Woods Way
State Farm, VA 23160

All Electronically Registered Counsel

CLERK OF THE U.S. DISTRICT COURT
105 U.S. COURTHOUSE
46 EAST OHIO STREET
INDIANAPOLIS, INDIANA 46204

OFFICIAL BUSINESS

FILED

DEC 0 1 2022

U.S. DISTRICT COURT
INDIANAPOLIS, INDIANA

( 1:21-cv-201 )
KEVIN JOHNSON
1007485
24414 Musselwhite Dr.
Waverly VA 23891

NIXIE        274   7E 1         0211/25/22

RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

BC: 46204199999    2040N329152-00853



DISTRICT COURT
RTHOUSE
O STREET
NDIANA 46204

USINESS

$ 001.92⁰
PITNEY BOWES
02 1P
0000938573   OCT 26 2022
MAILED FROM ZIP CODE 48204

# FILED

### DEC 2 7 2022

U.S. DISTRICT COURT
INDIANAPOLIS, INDIANA

( 1:21-cv-201 )
KEVIN JOHNSON
1007485
24414 Musselwhite Dr.
Waverly VA 23891

*Send all legal correspondence to 3521 Woods Way Idale Farm, Va 23160*

NIXIE      274   50 1      0212/17/22
       RETURN TO SENDER
            REFUSED
       UNABLE TO FORWARD

BC: 46204199999   2040N351221-00834

AA-34

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEVIN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00201-JMS-MG |
| | ) | |
| JOHN PURDUE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**Order Discussing Notice of Mail Seized and Service on Defendant John Purdue**

**I. Notice of Mail Seized**

Plaintiff Kevin Johnson has filed a notice stating that mail sent to him from the Court has been seized. Dkt. 67. The **clerk shall include** a copy of the docket with Mr. Johnson's copy of this Order. Mr. Johnson may identify any Court order that he has not received and request a copy.

**II. Service on Defendant Purdue**

The Court has attempted to effect service on defendant John Purdue, who has been identified as a mental health provider, including by requesting that counsel for the medical defendants provide a last known address for him. Dkt. 64. Counsel has indicated that prison medical provider Wexford of Indiana, LLC was not able to locate a current or former employee named John Purdue. Given this, Mr. Johnson shall have **through November 3, 2021**, to provide further information regarding the defendant he identifies as John Purdue so that the Court may complete service on the intended defendant. If Mr. Johnson wishes to request additional time or discovery to properly identify this defendant, he may file a motion with the Court. To assist Mr. Johnson, counsel for the State defendants is requested to notify the Court by **October 18, 2021**, whether there was a state employee at Pendleton Correctional Facility named John Purdue during

the times relevant to the complaint. If so, counsel should provide this defendants' last known address and may do so *ex parte*. In the alternative, counsel may obtain this defendants' permission to waive service of a summons.

**IT IS SO ORDERED.**


Date: 10/5/2021


Mario Garcia
United States Magistrate Judge
Southern District of Indiana


Distribution:

KEVIN JOHNSON
A787991
SOUTHERN OHIO CORRECTIONAL FACILITY
P.O. Box 45699
Lucasville, OH 45699

All Electronically Registered Counsel

**NOTICE OF WITHHOLDING:** **CORRESPONDENCE**

INSTITUTION: _SocF_       DATE: _9/08/2021_

TO: _Clerk of the US District Court 210 Federal Bldg 121 West Spring St New Albany, IN 47150_
    SENDER                     ADDRESS OR LOCK

TO: _Kevin Johnson A-787991_          _K6-80_
    RECIPIENT                   ADDRESS OR LOCK

FROM:   Mail Department Supervisor/(Managing Officer's Designee)

SUBJECT:   Withholding of Correspondence: _Legal Mail_

**FILED**

**09/16/2021**

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

Rules 5120-9-17 and 5120-9-18 of the Administrative Code of Ohio permit mail to or from an inmate to be opened and read, and to be withheld when the contents of the mail present a threat to the security of the institution or when the contents violate state or federal law or institutional rules.

The above correspondence has been received at the institution and is being withheld for the reasons that follow:

_Stg K9 indicated that illegal Substances maybe Contained in I/m Johnson's Legal Mail_

                                                  MAIL DEPARTMENT

You have a right to request a review of this decision. If you wish a review, you must check the box below (Request Review) and send a copy of this form to the Warden within ten (10) days of this notification. Failure to request a review within ten (10) days will constitute acceptance of this decision and the correspondence will be destroyed unless you have checked the box below, requesting the mail be returned to sender.

☐ REQUEST REVIEW OF DECISION

☐ REQUEST MAIL BE RETURNED TO SENDER (At your expense.)

                                              INMATE'S SIGNATURE

**\*SENDER:** If you designate the correspondence returned, please enclose a self-addressed envelope.

WHITE - SENDER       CANARY - RECIPIENT       PINK - DEPT. WARDEN/OPERATIONS       GOLDENROD - MAIL ROOM FILE
DRC4149 (REV8/95)                                                  ACA 4430 through 4438

AA-37

Pages: 105

Filed: 03/22/2024

Document: 28

Case: 23-2478

**Mail and Visiting**
**Southern Ohio Correctional Facility**
P.O. Box 45699
Lucasville, Ohio  45699-0001
DRC 1453

Southern Ohio
COLUMBUS OH 430
Correctional Facility
14 SEP 2021 PM 5



U.S. POSTAGE ⟫ FITNEY BOWES

ZIP 45648
02 4W
0000346166 SEP. 13 2021.

$ 000.51⁰

Office of the Clerk
of the
U.S District Court
210 Federal Building
121 West Spring Street
New Albany, INDIANA 47150

**FILED**

SEP 16 2021

U.S. DISTRICT COURT
NEW ALBANY, INDIANA

47150-364360

AA-38

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | |
|---|---|
| **KEVIN JOHNSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CAUSE NO.  1:21-cv-201-JMS-MG |
| | ) |
| **JOHN PURDUE, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**SUPPLEMENT TO DEFENDANTS' RESPONSE TO**
**MOTION FOR INTERVENTION AND FOR HEARING**

Defendants Robert E. Carter Jr. and Dushan Zatecky, by counsel Deputy Attorney General

Andrew Kirtley, supplement their response in opposition to Plaintiff's motion for intervention and

for hearing [ECF 60] as follows.

In paragraph five, undersigned counsel indicated that Plaintiff's items were on a pallet and

ready to be sent.  Undersigned counsel has now learned that the items are in transit, or have already

been delivered to Virginia. Undersigned counsel is now unaware of Virginia or Ohio's future plans

for Plaintiff.

Respectfully submitted,

Theodore E. Rokita
Indiana Attorney General
Attorney No. 18857-49

Dated:  August 18, 2021     By:     W. Andrew Kirtley
Deputy Attorney General
Attorney No. 35027-49

Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 W. Washington St.

AA-39

Indianapolis, IN 46204-2770
Phone: (317) 232-7144
Fax:    (317) 232-7979
Email: Andrew.Kirtley@atg.in.gov

## CERTIFICATE OF SERVICE

I certify that on August 18, 2021, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system.  Notice of this filing will be sent to all registered parties by

operation of the Court's electronic filing system.

I further certify that on August 18, 2021, a copy of the foregoing was mailed, by first-class

U.S. Mail, postage prepaid, to the following non CM/ECF participant:

Offender Kevin Johnson
#A787991
SOUTHERN OHIO CORRECTIONAL FACILITY
P.O. Box 45699
Lucasville, OH 45699

W. Andrew Kirtley
Deputy Attorney General

Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN  46204-2770
Phone: (317) 232-7144
Fax:    (317) 232-7979
Email: Andrew.Kirtley@atg.in.gov

AA-40

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | |
|---|---|
| **KEVIN JOHNSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CAUSE NO.  1:21-cv-201-JMS-MG |
| | ) |
| **JOHN PURDUE, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**DEFENDANTS' RESPONSE TO MOTION FOR INTERVENTION AND**
**FOR HEARING**

Defendants Robert E. Carter Jr. and Dushan Zatecky, by counsel Deputy Attorney General Andrew Kirtley, respond in opposition to Plaintiff's motion for intervention and for hearing, and request that his motion be denied.  In opposition, defendants state as follows:

1. On August 2, 2021, Plaintiff filed a motion for intervention and for hearing. [ECF 59]  As he is the *pro se* Plaintiff in this action, he cannot intervene in this lawsuit.  Accordingly, his motion generally seeks a hearing. [See *id*., generally]

2. In his motion, Plaintiff makes various baseless and unsupported allegations against "defendant Carter's office" and asserts his transfer was done with undersigned counsel's knowledge.  [*Id*. ¶ ¶ 3, 4]  These baseless accusations are categorically false.

3. Plaintiff admits that he did not draft and file his motion with the Court, but instead another individual submitted this motion with his signature. [*Id*. ¶ 4] Under Rule 11, "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented."

4. In his filing, "Plaintiff swears to the truth of the foregoing under penalty of perjury." [ECF 59 ¶ 6]  Plaintiff should be sanctioned for his attempted fraud upon the Court. "Courts may

AA-41

impose appropriate sanctions, including dismissal or default, against litigants who violate discovery rules and other rules and orders designed to enable judges to control their dockets and manage the flow of litigation." *Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011).

5.   A hearing on this matter would be futile, as Plaintiff only requests the return of his items. The Indiana Department of Correction is sending the items to Virginia, as they have been informed by the Ohio Department of Rehabilitation and Correction that they are transferring Plaintiff already based on his conduct.  This is normal for Plaintiff as he has now been transferred at least seven times since 2012 for his conduct. [See ECF 59 ¶ 2]  The items are on a large pallet ready to be sent.

6.   Counsel for Medical Defendants were contacted and agree that a hearing should not occur.

WHEREFORE defendants Robert E. Carter Jr. and Dushan Zatecky request that the motion be denied.

Respectfully submitted,

Theodore E. Rokita
Indiana Attorney General
Attorney No. 18857-49

Dated:  August 16, 2021            By:    W. Andrew Kirtley
Deputy Attorney General
Attorney No. 35027-49

Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 W. Washington St.
Indianapolis, IN 46204-2770
Phone:  (317) 232-7144
Fax:     (317) 232-7979
Email: Andrew.Kirtley@atg.in.gov

AA-42

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 16, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

I further certify that on August 16, 2021, a copy of the foregoing was mailed, by first-class U.S. Mail, postage prepaid, to the following non CM/ECF participant:

> Offender Kevin Johnson
> #A787991
> Ohio Correctional Reception Center
> P.O. Box 300
> 11271 St. Rt 762
> Orient, OH 43146

W. Andrew Kirtley
Deputy Attorney General

Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN  46204-2770
Phone:  (317) 232-7144
Fax:    (317) 232-7979
Email: Andrew.Kirtley@atg.in.gov

AA-43

Kevin Johnson,

      Plaintiff,

v.   Case No. 1:21-cv-00201

John Purdue, et. al,

      Defendants.

**FILED**

**08/02/2021**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF

INDIANA

MOTION FOR INTERVENTION AND FOR HEARING

Plaintiff pro se hereby moves this court's for relief against obstruction of his ability to prosecute this case pro se and for a hearing hereon, because:

1. During the week of June 27th, 2021, plaintiff was threatened by Indiana Department of Corrections (IDOC) officials that if he did not stop his litigations against IDOC officials, he would be transferred to another state where he would not like the conditions. Plaintiff made documented records of these threats.

2. On July 21, 2021 plaintiff was transferred from the Wabash Valley Correctional Facility (WVCF) to the Ohio Department of Rehabilitation and Corrections (ODRC) and denied under orders of defendant Robert E. Carter to take any property with him, his legal property in particular. Plaintiff has been interstate

transferred six times since 2012 and has never before been denied to take any legal property whatsoever with him.

3. At the time of his transfer plaintiff had a response deadline on a discovery request from defendant Northcutt and another deadline in another pending case in this court, which he explained to IDOC officials on July 12, 2021. They still refused to allow him to take any property with him per directions from defendant Carter's office, and with the Attorney General counsels' knowledge.

4. Since his assignment to ODRC, plaintiff has been denied stationery and writing supplies, has been blocked on four separate occasions from mailing and filing motions and notices with this U.S. District Court about his address change and obstructions to his litigating of this case. Plaintiff mailed four filings to this court between July 14 and July 19th, 2021 which ODRC officials intercepted and did not forward to the court. That these filings were never received by the court was concerned in telephone conversations that plaintiff held with Jennifer the Pro Se Clerk in this court. He is therefore having someone on the outside draft and email this filing with the court now. Plaintiff has also been denied all access to his property since July 12, 2021, including his case file, work product, evidentiary documents, and other materials relevant to this case. This to the knowledge of and by actions of Defendant Carter and his staff and defense counsel. The Attorney General defense counsels were also contacted by an Indiana attorney seeking resolution of this situation which defense counsels ignored.

AA-45

5. In ODRC custody Plaintiff has been blocked from every attempt and every
   avenue of communicating with this court and pursuing this case. Plaintiff believes
   defendant Carter, in collaboration with defense counsels and OPRC
   administrative heads, is attempting to destroy his property relevant to this case
   and spoliate evidence. Plaintiff believes defense counsel has played a major role
   in his retaliatory transfer and obstructing his ability to prosecute this case because
   plaintiff put them on notice just before receiving the transfer threats that he was
   pursuing sanctions and contempt citations for basing a summary judgment motion
   in a separate case in this court upon false evidence and concealing evidence in
   their possession that revealed their evidence to be false. Conduct much like that
   for which their office was sanctioned by this court in the case of *Littler v.
   Martinez* (proceedings of which this court may take judicial notice).


6. Plaintiff can not proceed in this case and his documentary materials, material
   evidence, and work product are in danger of being destroyed and are being
   withheld from plaintiff because of actions and designs of defendant Carter and his
   agents, and their collaborations with ODRC and other officials, unless this court
   intervenes to protect his interests as a party plaintiff and it's duties to administer
   justice, consistent with its inherent contempt power in 18 U.S.C. section 401, etc.
   This matter must be heard and resolved forthwith. Plaintiff is also submitting a
   discovery request herewith to produce his withheld materials related to this case
   and needed legal property because these are matters that are or may be in this case

AA-46

and he does not have the means to serve them on defense counsel for reasons

stated herein.

Plaintiff swears to the truth of the foregoing under penalty of perjury.

THEREFORE, this court should take summary action as being fair and just to arrest the

obstruction of his ability to prosecute this action and grant an emergency hearing on this matter.

Respectfully Submitted,

s/Kevin Johnson

Plaintiff pro se

Reply to: Kevin Johnson #A787991

Southern Ohio Correctional Facility

P.O Box 45699

Lucasville, OH 45699

AA-47

**FILED**

**07/26/2021**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF INDIANA

Indianapolis Division

KEVIN JOHNSON,                                                    Plaintiff,

v.                    Case No. 1:21-cv-00201-JMS-MG

JOHN PUROVE, et al.,                                        Defendants.

NOTICE TO COURT

Plaintiff pro se hereby notifies this Court of the following:

1. On July 12, 2021, plaintiff was transferred from the Indiana Department of Corrections (IDOC) to the Ohio Department of Corrections (ODOC). His contact information and address are as follows:

Kevin Johnson, No. A787991

Ohio Correctional Reception Center

P.O. Box 300

11271 St. Rt 762

Orient, OH 43146

Until further notice all filings and correspondence related to this case should be mailed to him as indicated above.

2. Plaintiff submits that based upon statements of IDOC officials and circumstances surrounding and occurring since, this transfer ~~occurred~~ was arranged by defendant Carter and his staff, in collusion with the directors of the ODOC, the Virginia Department of Corrections and defense counsels from the Indiana Attorney Generals office in retaliation for and to sabotage plaintiff's ability to pursue and prosecute

AA-48

this Case and the original case from which this action
was severed. Plaintiff has been denied all of his files,
evidentiary materials, work product, research materials, and
all documents related to this case since the July 12, 2021
transfer. Plaintiff has been interstate transferred
six times since 2012 and has never, until now, been
denied to take with him _any_ of his property including
legal property needed to pursue pending actions.

3.     Since being held in ODOC custody plaintiff has
been refused all legal supplies and assistance which he
has requested daily from ODOC officials, whom he has
notified of the pendency of this case and case #
2:20-cv-00602 which he has a July 19, 2021
summary judgment response deadline in under order. He
has informed them of this deadline as well and a reply
deadline to discovery ~~sent to~~ requests sent to him, by in this instant case
defense counsel for Wexford LLC, et al., which he
now cannot answer and does not have because of the
transfer and withholding of his legal property in ODOC
custody.

4.     Upon his July 12, 2021 transfer Idoc officials
did threaten to destroy plaintiff's property that he had
in his possession inside his assigned cell in Idoc
custody prior to that transfer.

5.     Plaintiff submits that he can prove the
foregoing and anticipates filing a motion for contempt
under 18 U.S.C. § 401 and this court's inherent

-2-

AA-49

contempt powers for obstruction of the administration of justice, but is being prevented at this time from doing so by the withholding of his property and denial of legal assistance in DDOC custody.

6.    Defense counsel's role in these obstructive actions has been motivated in part by their (the OAG attorneys) having filed a summary judgment motion in case # 2:20-cv-00502 in this court using false evidence and concealing records in their possession, from the court to raise a failure to exhaust administrative remedies defense, which they know is contemptuous and sanctionable conduct, which plaintiff was in process of assailing. To prevent this, the transfer of plaintiff and separation of him from his property and obstruction of his ability to meet his July 19, 2021 reply deadline to that summary judgment motion was colluded in by counsel and officials described in ¶ 2.

7.    Because all of his legal property is being withheld from him plaintiff does not have any of the defense counsels' mailing addresses, so he is submitting a document production request herewith to defendant Carter by filing it with the record of this case, for the return and use of that withheld property related to matters that are and may be raised in this case, including matters addressed in this notice.

Respectfully submitted,

Plaintiff pro se

Reply to: Kevin Johnson, No. A787991

Ohio Correctional Reception Center

P. O. Box 300

Orient, OH 43146

- 4 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KEVIN JOHNSON,                          )
                                        )
                    Plaintiff,          )
                                        )
            v.                          )        No. 1:21-cv-00201-JMS-MG
                                        )
JOHN PURDUE, et al.                     )
                                        )
                    Defendants.         )

**Order Screening Complaint and Directing Further Proceedings**

Plaintiff Kevin Johnson, an inmate at Wabash Valley Correctional Facility, brings this

action pursuant to 42 U.S.C. § 1983 alleging that his civil rights have been violated. Because the

plaintiff is a "prisoner" as defined by 28 U.S.C. § 1915A(c), this Court has an obligation under 28

U.S.C. § 1915A(a) to screen his complaint before service on the defendants.

**I. Screening Standard**

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint, or any portion of

the complaint, if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief

against a defendant who is immune from such relief. In determining whether the complaint states

a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive

dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a
> claim for relief that is plausible on its face. A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints such as that filed by the plaintiff are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## II. Discussion

The claims in this case were severed from the claims in *Johnson v. Carter, et al.*, 2:20-cv-602-JRS-MJD. The claims proceeding in this case are Mr. Johnson's claims that that he received constitutionally inadequate mental health and dental care. These claims are set out in Claims VII and VIII of the Complaint. Mr. Johnson sues: (1) John Purdue, (2) Dr. Easter-Rose; (2) Ms. Northcutt; (3) Wexford of Indiana, LLC; (4) Dr. Noll; (5) D. Ingalls; (6) Robert Carter; and (7) Dushan Zatecky.

In Claim VII, Mr. Johnson alleges that defendants Purdue, Easter-Rose, and Northcutt denied him necessary mental health care because of his refusal to sign a Wexford-required consent form. In Claim VIII, Mr. Johnson alleges that defendants Dr. Noll and D. Ingalls failed to provide him with care for dental pain. He also alleges that the prison's dental equipment was not working and that defendants Carter, Zatecky, and Wexford were aware of this faulty equipment and did not solve the problem.

Based on the screening standard set forth above, these claims shall proceed as claims that the defendants were deliberately indifferent to Mr. Johnson's serious medical needs in violation of his Eighth Amendment rights. The claims against Wexford shall proceed claims that Mr. Johnson's injuries were the result of a policy, practice, or custom on Wexford's part.

This summary of claims includes all of the viable claims identified by the Court. If the plaintiff believes that additional claims were alleged in the Complaint, but not identified by the Court, he shall have **through May 20, 2021,** in which to identify those claims.

### III. Conclusion and Service of Process

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to the defendants in the manner specified by Rule 4(d). Process shall consist of the complaint, dkt. [1], applicable forms (Notice of Lawsuit and Request for Wavier of Service of Summons and Waiver of Service of Summons), and this Order.

Mr. Johnson's motion to dispense with filing fee, dkt. [17], is **denied** as unnecessary because he has paid the filing fee.

Defendants Dr. Noll, D. Ingalls, Dr. Easter-Rose, John Purdue, and Ms. Northcutt are understood to be employees of Wexford of Indiana, LLC. A copy of this Order and the process documents shall also be served on Wexford electronically. Wexford is ORDERED to provide the full name and last known home address of any defendant who does not waive service if they have such information. This information may be provided to the Court informally or may be filed ex parte.

**IT IS SO ORDERED.**

Date: 4/22/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

KEVIN JOHNSON
264847
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

AA-54

John Purdue
MEDICAL EMPLOYEE
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
PO Box 1111
Carlisle, IN 47838

Dr. Easter-Rose
MEDICAL EMPLOYEE
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
PO Box 1111
Carlisle, IN 47838

Ms. Northcutt
MEDICAL EMPLOYEE
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
PO Box 1111
Carlisle, IN 47838

Dr. Noll
MEDICAL EMPLOYEE
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
PO Box 1111
Carlisle, IN 47838

D. Ingalls
MEDICAL EMPLOYEE
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
PO Box 1111
Carlisle, IN 47838

Wexford of Indiana, LLC
9425 N. Meridian Street, Suite 111
Indianapolis, IN 46260


Electronic Service to the Following Employees of the Indiana Department of Correction

Robert Carter
Dushan Zatecky

AA-55

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| KEVIN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00602-JRS-MJD |
| | ) | |
| ROBERT E. CARTER, JR., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Severing Claims into Separate Action**

Plaintiff Kevin Johnson, who is currently incarcerated at Wabash Valley Correctional Facility, filed this action pursuant to 42 U.S.C. § 1983 alleging various violations of his constitutional rights during his incarceration at Pendleton Correctional Facility.

**Discussion**

Generally, a party asserting a claim may join "as many claims as it has against an opposing party," Fed. R. Civ. P. 18(a), and persons "may be joined in one action as defendants if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," Fed. R. Civ. P. 20(a)(2)(A).

However, on just terms, "[t]he court may also sever any claim against a party." Fed. R. Civ. P. 21. A district court has broad discretion to sever a claim under Rule 21. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000); *see also Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (reviewing district court's decision to sever the plaintiff's claims for an abuse of discretion). It may exercise that discretion "to sever any claims that are 'discrete and separate' in the interest of judicial economy and to avoid prejudice." *Vermillion v. Levenhagen*,

604 F. App'x 508, 513 (7th Cir. 2015) (citing *Gaffney*, 451 F.3d at 442; *Rice*, 209 F.3d at 1016;

*Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985)).

"Before making the severance, the district court does not need to determine the merit of the

second claim. As long as there is a discrete and separate claim, the district court may exercise its

discretion and sever it." *Rice*, 209 F.3d at 1016. To be "discrete and separate . . ., one claim must

be capable of resolution despite the outcome of the other claim." *Gaffney*, 451 F.3d at 442 (internal

quotation marks omitted).

Mr. Johnson's complaint contains at least two distinct types of claims – claims against

prison officials related to his legal property and his confinement in long-term segregation and

claims related to his mental health and dental care. These claims are distinct from each other.

Although Mr. Johnson asserts claims against defendants Robert Carter, Commissioner of the

Indiana Department of Correction, and Dushan Zatecky, Warden of Pendleton Correctional

Facility, in both sets of claims, the Court can resolve the claims against prison officials

notwithstanding the outcome of the mental health and dental care claims and vice versa. It would

be in the interest of judicial economy to sever the mental health and dental care claims from the

claims related to his legal property and confinement in long-term segregation. Therefore, the Court

will do so.

### Severance

Consistent with the foregoing, the claims related to mental health and dental care are

**severed from the original complaint.** To effectuate this ruling, a new civil action from the

Indianapolis Division shall be opened, consistent with the following:

    a.  Kevin Johnson shall be the plaintiff in the newly opened action.

    b.  The Nature of Suit for the newly opened action shall be 555.

c. The Cause of Action for the newly opened action shall be 42:1983pr.

d. The complaint in this action shall be filed and re-docketed as the complaint in the newly opened action.

e. A copy of this Entry shall be docketed in the newly opened action.

f. This action and the newly opened action shall be shown as linked actions.

g. The defendants in the newly opened action shall be: John Purdue, Dr. Easter-Rose, Ms. Northcutt, Wexford of Indiana, LLC, Dr. Noll, D. Ingalls, Robert Carter, and Dushan Zatecky.

h. The assignment of judicial officers in the newly opened action shall be by random draw.

The clerk **is directed** to terminate defendants John Purdue, Dr. Easter-Rose, Ms. Northcutt,

Wexford of Indiana, LLC, Dr. Noll, and D. Ingalls from the docket.

**IT IS SO ORDERED.**

Date: 1/25/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

KEVIN JOHNSON
264847
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

AA-58

1:21-cv-00201-JMS-DML

IN THE UNITED STATES DISTRICT COURT

2:20-cv-00602-JRS-MJD          FOR THE SOUTHERN   DISTRICT OF INDIANA

KEVIN JOHNSON,                                                  Plaintiff,

v.

SCANNED at WVCF and Emailed on
11/16/20 by LLM  32 pages.
(date)  (initials)  (num)

ROBERT E. CARTER, JR., Commissioner,
      Indiana Department of Corrections (IDOC),

MARY K. HUDSON, Interstate Corrections
      Compact Administrator, IDOC,

L.A. VANNATTA, Grievance Appeal Administrator,
      IDOC,

FILED
11/16/2020
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

C. WILLIAMS, Grievance Appeal Administrator,
      IDOC,

Jon Adam Ferguson, Chief Legal Officer, IDOC,

DUSHAN ZATECKY, Superintendant, Pendleton
      Correctional Facility (PCF),

D. REAGLE, Deputy Superintendant, PCF,

J. BODKIN, Classification Supervisor, PCF,

VEYONA SHEPHERD, Grievance Specialist and
      Segregation Unit Case Manager, PCF,

CHRISTINA CONYERS, Grievance Specialist, PCF,

AARON SMITH, Administrative Assistant, PCF,

JOHN SAFFORD, Segregation Unit Team
      Manager, PCF,

C. EVANS, Segregation Unit Case Manager,
      PCF,

T. COCHRAN, Segregation Unit Case Manager,
      PCF,

AARON LONG, Internal Affairs Investigator (IAI),
      PCF,

MS. NELMS, IAI, PCF,

B. TURNEY, IAI, PCF,

SEAN WYATT, IAI, PCF,

C. HOUCHINS, IAI, PCF,

J. DAVIS, Correctional Officer Lieutenant, PCF,

J. LYTTLE, Grievance Appeal Administrator, IDOC,

AA-59

-1-

DR. NOLL, Dentist, PCF,

D. INGALLS, Dental Assistant, PCF,

DR. EASTER-ROSE, Psychiatrist, PCF,

JOHN PURDUE, Mental Health Counselor, PCF,

MS. NORTHCUTT, Mental Health Counselor, PCF,

Y. CHAMBERS, Mailroom Clerk, PCF,

DAWN REYNOLDS, Telephone System
        Coordinator, PCF,

D. DAVIS, Personal Property Department
        Supervisor and Correctional Officer, PCF,

WEXFORD OF INDIANA, L.L.C.,

J. JOHNSON, Correctional Officer Sergeant, PCF,

                                    Defendants.


## CIVIL ACTION COMPLAINT


### PARTIES

1.    COMES NOW your plaintiff who is confined within the IDOC as Kevin Johnson, No. 264847 at Wabash Valley Correctional Facility, P.O. Box 1111, Carlisle, IN 47838.

2.    Each defendant was at all times relevant hereto acting under color of state law, and all except defendant Wexford and its employees as listed below, were at all times relevant hereto employed by and within the IDOC.

3.    Defendant Wexford is a corporate medical and mental health care contractor that provides medical, dental, and mental health care to persons incarcerated within the IDOC.

4.    Defendants Noll, Ingalls, Easter-Rose, Purdue, and Northcutt were at all times relevant hereto employed by Wexford at PCF.

- 2 -

AA-60

5.    Each defendant's official duties and responsibilities are characterized by their official titles as set out in the caption of this document following their names.

6.    Each defendant is being sued in their personal capacity for damages and official capacity for injunctive and declaratory relief.

## JURISDICTION

7.    This court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1343 and supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367.

## CHARGE AND INTRODUCTION

8.    This is a civil action brought by plaintiff seeking relief against defendants in the form of compensatory, punitive and nominal damages, and declaratory and injunctive relief.

9.    Plaintiff's federal claims arise under 42 U.S.C. § 1983 for violations by defendants of his federally protected rights.

10.    As to Claim I plaintiff charges that defendants have as supervisors and conspirators permitted, failed to remedy, and directly denied his rights to court access and to petition the government for redress, subjected him to denials of and retaliation for his political views, and speech and use of the press, and caused him to suffer the abuses set out in Claims I through IX. This in violation of the 1st and 14th Amendments( See also ¶¶ 11-16 supra).

11.    As to Claim II plaintiff charges that defendants have denied his rights ~~against the~~ to

- 3 -

AA-61

court-access and to petition the government for redress, to privacy in his legal documents, attorney-client privilege and to legal property against the 1st and 14th Amendments.

12.     Plaintiff submits that he is _not_ seeking to challenge the fact or duration of his confinement under 42 U.S.C. § 1983 herein, but has set out the facts underlying his unlawful confinement in Claim II solely to demonstrate that he has nonfrivolous claims of unlawful confinement which he's been prevented from filing in the appropriate courts by defendants' acts and omissions, which is necessary to raise his claims herein of unconstitutional denial of court access.

13.     As to Claim III plaintiff charges that defendants have denied his 1st Amendment rights to confidential communication with attorneys, attorney/client privilege and free speech.

14.     As to Claim IV plaintiff charges that defendants have denied his constitutional right to free political belief, association, and expression, subjected him to retaliation for the exercise thereof, and that they subjected him to racial and political discrimination, in violation of the 1st and 14th Amendments.

15.     As to Claim V plaintiff charges that defendants have denied him media, publications and mail against his rights to free speech and press and denied him equal protection and procedural due process against the 1st and 14th Amendments.

16.     As to Claim VI plaintiff charges that defendants have subjected him to denial of due process of law and/or cruel and unusual punishment in violation of the 14th and/or 8th Amendments by confining him to long term abusive and inhumane solitary confinement

AA-62

without valid justification and without regard for his preexisting mental health conditions.

17.    As to Claim VII plaintiff charges that defendants have subjected him to denied mental health care, and privacy in his discussions with mental health / medical staff, in violation of the 14th and/or 8th Amendments by denying him due process, privacy and/or subjecting him to deliberate indifference to his serious mental health needs.

18.    As to Claim VIII plaintiff charges that defendants have denied him due process and/or subjected him to deliberate indifference to his serious dental needs against the 14th and/or 8th Amendments.

19.    As to Claim IX plaintiff charges that defendants have subjected him to abusive bystander gas assaults without care or decontamination, thus denying him due process and subjecting him to excessive force and denied medical care against the 14th and/or 8th Amendments.


## ADMINISTRATIVE EXHAUSTION

20.    Plaintiff has exhausted all administrative remedies to the extent made available to him by custodial officials.


## STATEMENT OF FACTS

AA-63

<u>CLAIM I</u>

21.  Plaintiff is Black and his political orientation is Socialist and Communist. Plaintiff is also a widely published artist and author whose work has been published in many books, periodicals and academic journals, also online, domestically and internationally.

22.  Plaintiff's writings cover a wide range of nonfiction subjects and issues, including politics, history, philosophy, economics, culture, Black and other ethnic studies, prison conditions, and more. His prison and jail related writings have had a particularly wide readership and often report on abuses occurring in U.S. jails and prisons committed by officials.

23.  Plaintiff's confinement in the IDOC as set out in the claims in this suit jointly and severally, by defendants Carter, Hudson, Rodkin, Zatecky and others, especially while at PCF, has been politically motivated, in retaliation for, and in response to and calculated to suppress his political views and expression and the content of his writings, especially those about jail and prison conditions.

24.  These defendants confined him to the IDOC and PCF with the intentions of subjecting him to the abusive conditions and treatments he's suffered as set out in all the claims herein for the aforesaid reasons.

25.  Said conditions and abuses have also been calculated by said defendants to prevent and suppress his ability to challenge and win relief from his IDOC confinement and conditions thereof. See Claim II

26.  All the defendants' acts and omissions set out throughout this ~~complaint~~ complaint were the results of and motivated by defendants' agendas as stated above.

- 6 -

## CLAIM II

27.     Plaintiff has been confined in various states since 1990 under several Virginia criminal proceedings. In all of those proceedings no criminal charges nor process was ever issued against nor served on plaintiff, and he did not otherwise voluntarily appear. Also in each of those criminal cases the courts appointed counsel to represent him against his will and without considering his explicit requests to proceed pro se.

28.     The Virginia Attorney General and prosecuting attorneys' offices have never disputed these facts and have actually conceded them to be true, and that these facts make the criminal convictions under which he has been and is confined void because procured by extrinsic fraud, without the courts obtaining personal jurisdiction over him, and by structural errors. The Virginia state attorneys' offices have contended, however, that plaintiff has failed to raise these claims in the appropriate procedural contexts in Virginia's courts to win his release from confinement. Those procedural remedies remain ~~were~~ available to plaintiff.

29.     The reason plaintiff has failed to correctly challenge his unlawful confinement and win his release, is because his custodians have consistently obstructed his access to legal information, assistance, and materials needed to raise such challenges.

30.     Plaintiff has been confined in the IDOC since November 2018 under ~~fictitious~~ color of Interstate Corrections Compact agreement between IDOC ~~officials~~ and Virginia officials. He is being held in the IDOC under the void VA criminal proceedings mentioned above and/or a fictitious Virginia criminal detainer which he is not the person named as defendant ~~to~~ in.

- 7 -

31.    .    IDOC officials including defendants Carter, Hudson, Zatecky, Long, Nelms and ~~Davis~~ D. Davis know that plaintiff's confinement is unlawful and he desires to challenge it in the appropriate courts, and have confined him under conditions devised to prevent him from contesting that confinement and other illegal conditions of confinement, by denying him access to and destroying his needed legal property and information, obstructing and denying his communications with attorneys willing to assist him, etc.

32.    During 2016 plaintiff was confined in Texas, where he was subjected to illegal incarceration and many illegal treatments including being tear gassed by custodial officials while he was handcuffed behind his back and locked securely inside a cell, in retaliation for his writing grievances and published articles challenging and exposing abusive conditions in Texas custody.

33.    Plaintiff intended and desired to bring valid federal civil actions in the Texas federal courts under 42 U.S.C. § 1983 against those conditions and treatments. The limitations periods for filing those civil actions expired in December 2018. Plaintiff was prevented from bringing those actions within the required timeframes because of defendants destroying, and denying him access to and use of, his legal property and documents needed to prepare and file those civil actions while ~~he was~~ he was confined at PCF.

34.    Plaintiff entered the IDOC with numerous boxes of personal property, most of which (approximately 2/3 of that property), consisted of legal materials, records, and

related documents, including Virginia laws and records otherwise unavailable to plaintiff in IDOC custody.

35.      Plaintiff was assigned to PCF on November 16, 2018. His boxes of property were shipped to PCF before he arrived.

36.      Immediately upon his assignment to PCF and for months thereafter, plaintiff submitted repeated written requests and grievances to defendants Evans, Reasle, Williams, Shepherd, D. Davis, Safford, Zatecky and others seeking access to his legal property, and explained that he had filing deadlines and desired to timely file anticipated lawsuits as set out above, and needed his property to do so.

37.      These defendants acknowledged his requests and need of his legal property and promised to allow plaintiff access to and to receive his needed property, but they never gave him access to it and only gave him the run around while keeping that property from his for months on end.

38.      As a result plaintiff was prevented from filing those actions which became barred during this time by the applicable statutes of limitations. Also plaintiff was and continues to be prevented from bringing proceedings to challenge and win his release from unlawful confinement.

39.      The denials and destruction of plaintiffs' needed legal property occurred as described below.

40.      Upon its arrival at PCF all of plaintiff's personal property was placed into defendant D. Davis's custody. As stated above, plaintiff sent repeated requests and grievances, and persisted for months thereafter, to defendants to access his needed legal

property. He even requested to be allowed to sort through it as IDOC policy permits to locate and separate specific materials that he needed and could keep within any required quantity limitations.

41. Defendants named above promised ~~to allow~~ but never permitted plaintiff to sort through, locate or receive the legal property he needed to make his anticipated filings within the required deadline and limitations periods, which periods expired and barred his filings as a result after months of his being denied access to the needed legal property.

42. Defendant D. Davis also spent months meticulously going through and reading plaintiff's legal materials including confidential communications with attorneys, courts and other sensitive legal documents and records, and work product materials. D. Davis used this period and process to locate and remove a large volume of legal records, lists of addresses (including courts' and attorneys' addresses and phone numbers), and other pertinent materials plaintiff needed to prepare and make his anticipated court filings and communicate with attorneys.

43. Defendant D. Davis confiscated those removed materials along with a large amount of other books and documents of plaintiff's described in Claim IV, falsely claiming it was all gang or "STG" (security threat group) materials.

44. D. Davis did this sorting and searching through plaintiff's legal property alone, without plaintiff and without any witnessing staffperson being present, in violation of IDOC policy. D. Davis also maliciously ransacked and shuffled together plaintiff's extensive

- 10 -

AA-68

legal files.

45.        D. Davis gave much of the legal and other property he confiscated of plaintiff's as STG materials to defendants Long, Nelms, Wyatt and Houchins in the PCF Internal Affairs office. These defendants knew the confiscated property was not STG materials but kept it all from plaintiff and/or destroyed it. This confiscated property amounted to at least three large boxes of books and documents.

46.        After promising to help plaintiff access and receive his needed legal property, defendant Shepherd repeatedly blocked plaintiff's numerous efforts to grieve the destruction, taking, and denial of his legal and other property which D. Davis took and withheld from him.

47.        From the legal materials taken from plaintiff, D. Davis also targeted property that plaintiff might use to sue him and other IDOC officials in future for their actions and omissions against him, including his law books like his unabridged Black's Law Dictionary, his Prisoner's Self Help Litigation Manual and others.

48.        Throughout plaintiff's assignment to PCF, D. Davis and the IAI defendants and others continued to frustrate and deny his access to his needed legal property and to read, confiscate and destroy his legal materials, especially those related to his attempts to bring legal attention and action against them.

49.        For example on July 15, 2019 plaintiff delivered legal documents to defendant T. Cochran to be photocopied, that consisted of a letter to attorney Dustin McDaniel and a grievance he'd filed with the IDOC ombudsman concerning IAI defendants' attempts to falsely STG profile plaintiff

and said ombudsman's reply that plaintiff was
in fact not affiliated with any STG.

50.   While defendant Cochrane had those documents,
she allowed defendant Nelms to take and read them.
Nelms and Cochran never returned those documents to
plaintiff, and in violation of IDOC policy Nelms and
Cochran never provided plaintiff any confiscation
notice for the taken documents thus preventing him
from grieving the taking.

51.   Plaintiff repeatedly gave Cochran written
requests to have his documents returned or a
confiscation notice given to him, Cochran and Nelms
refused to do either.

52.   These were concerted efforts by defendants
to frustrate and block plaintiff's efforts and ability
to pursue legal actions while in IDOC custody, of
which obstructing his ability to communicate with
attorneys willing to assist him was a part. See
Claim III also.

AA-70

CLAIM III

53.     Under IDOC policy # 00-01-102 and others, those confined in IDOC custody shall be allowed calls to attorneys which "shall not be recorded or monitored."

54.     Prior to plaintiff's PCF assignment, he was put into contact with a Pennsylvania-based attorney Dustin McDaniel of the Abolitionist Law Center law firm. Mr. McDaniel was, at all times while plaintiff was confined to PCF, ~~also~~ willing to give limited assistance by telephone communications to plaintiff ~~in~~ with pro se legal matters related to challenging his confinement and conditions thereof.

55.     On November 19, 2018 plaintiff submitted a request to defendant Reynolds to add Mr. McDaniel's phone number to plaintiff's legal call list, so he could communicate with Mr. McDaniel at plaintiff's own expense on an unmonitored/unrecorded phone line. All nonlegal calls made by persons in IDOC custody are monitored and recorded.

56.     To obstruct plaintiff's receiving legal assistance for reasons set out in Claim II, defendants Turney and Reynolds refused to add Mr. McDaniel's phone number to plaintiff's legal call list, claiming falsely that Mr. McDaniel's number which plaintiff provided on his November 19, 2018 request couldn't be confirmed.

57.     Plaintiff grieved this denial and at the appellate level defendants Smith and Zatecky easily and quickly confirmed Mr. McDaniel's legal status and number. Specifically, on February 8, 2019 Zatecky informed plaintiff in writing that, "Admin[istrative] staff contacted Attorney Dustin McDaniel. As of 2/7/19 he provided documentation verifying that he is an attorney ~~and~~ in good standing and

- 13 -

AA-71

that he is consulting with you in his official capacity. Due to this I am approving this phone number to be added as an attorney contact number."

58.     Despite Zatecky's confirming this lawyer's legal status and number, Mr. McDaniel's phone number was never added to plaintiff's legal call list while he was at PCF. When plaintiff complained that Mr. McDaniel's number was still not added to his legal call list, defendants Williams, Shepherd, Cochran, Turney, ~~and others~~ Reynolds and others falsely claimed that Mr. McDaniel's number and status couldn't be verified citing Turney's and Reynold's prior false claims. Zatecky and Smith refused to correct the matter and have Mr. McDaniel's number added to plaintiff's legal call list.

59.     To make it clear that their intentions were to block plaintiff from communicating with Mr. McDaniel, Reynolds and Turney also refused to allow plaintiff to call Mr. McDaniel on regular monitored and recorded phone lines. Mr. McDaniel's was the only phone number out of dozens that they blocked plaintiff from calling on the regular phone lines.

60.     Because of being denied ~~phone~~ communications with Mr. McDaniel, plaintiff was referred to an Indiana-based attorney Richard Waples by outside contacts. Mr. Waples wanted to consult with plaintiff by phone to determine if he'd be willing to provide plaintiff some of the help that Mr. McDaniel was prevented from giving him.

61.     On February 12, 2019 plaintiff was allowed to speak with Mr. Waples by phone, but was compelled by defendant Safford and Evans to hold this phone conversation in a small office with Evans sitting approximately three feet from plaintiff listening to the

phone conversation. Plaintiff protested Evans's presence, but was told by Evans that this was the only way the call would be permitted.

62. Because of the chilling effect of Evans's presence, plaintiff was unable to speak freely with Mr. Waples and could not discuss legal matters he desired to, including legal action against Evans and others for denying and destroying his legal property at PCF.

63. Defendants Zatecky, Shepherd and Lyttle upheld Evans's actions and refused to provide plaintiff a confidential call with Mr. Waples which could have easily been accomodated.

CLAIM IV

64.     As set out in Claim I, plaintiff is Black and his political orientation is Communist and Socialist. Plaintiff supports the New Afrikan Black Panther Party, (NABPP), which is a non-violent, predominantly Black Socialist political party based in the city of Newark, N.J.

65.     The NABPP has been found by VA courts to be a constitutionally protected political party and not any gang as plaintiff's past custodians in Virginia falsely proclaimed in an effort to suppress this Party's free political expression, association, and affiliation. in VA.

66.     One of the reasons Virginia officials have moved plaintiff into custody in other states has been to try and have the NABPP stigmatized and repressed in other states where they failed to in Virginia, so to block its literature and expression wherever plaintiff is sent.

67.     The NABPP is not a gang nor an STG (or security threat group), and it does not meet the criteria of an STG as defined in IDOC policy — specifically the IDOC's Security Threat Group policy # 02-03-105.

68.     As set out in Claim I, plaintiff is a widely published artist and author whose writings cover a wide range of non-fiction subjects.

69.     Included in plaintiff's numerous boxes of personal property which defendant D. Davis took into his custody upon plaintiff's confinement to PCF, ( see Claim II ), were copies of hundreds of plaintiff's published articles and others he was in the process of writing for publication; dozens of NABPP newsletters, books and articles; dozens of books on Black history and by and about Black historical figures; dozens of books by and about writers

- 16 -

and the theories and histories of Communism and Socialism, etc.

70.   When D. Davis, who is white and pro-capitalist, went through plaintiff's belongings as described in Claim II, Davis targeted and confiscated most all of plaintiff's articles and those he was in the process of writing, ~~drafted~~ and most all of his books, newsletters and other materials by and about the NABPP, on Black history and by and about Black historical figures and culture, and on and by writers on Communism and Socialism and Communist/Socialist theory and history.

71.   None of these materials that Davis targeted and took presented any threat to institutional security and safety. Davis targeted and took these materials based upon his and his colleagues' own racial and political prejudices and intolerance, their dislike of plaintiff's writings and materials that criticized U.S. government and prison/jail practices and conditions.

72.   The materials that D. Davis targeted and confiscated of plaintiff's amounted to at least three large boxes of materials. Along with the legal property that Davis took of plaintiff's as described in Claim I, Davis confiscated all this property upon the false bases of it being "All STG material," and he gave it to the IAI defendants Long, Nelms, Wyatt and Hovchins. This and the taken legal property was never returned to plaintiff.

73.   Plaintiff was subjected to many forms of abuse and unjust treatments because of his political views and support for and adherence to the politics of the NABPP, including defendants ~~paul~~ holding him in long term inhumane solitary confinement, claiming his political views were STG. See Claim VI.

-17-

AA-75

## CLAIM V

74.     While at PCF plaintiff had subscriptions to several periodicals including San Francisco Bay View - ~~National~~ National Black Newspaper (monthly), Socialist Viewpoint magazine (bi-monthly), Socialism and Democracy journal (quarterly), the Militant newspaper (weekly), Welfare Warriors magazine, Spear and Shield Black Newspaper (quarterly), Turning the Tide anti-racist newspaper (quarterly), and others. He also ~~corres~~ corresponded with numerous editors, publishers and journalists, or attempted to maintain such correspondences which were obstructed by defendants.

75.     Defendants Conyers, Chambers, Long, Turney, Wyatt and others repeatedly banned and denied plaintiff's receipt of these publications and many others and mail to him, because of their orientation to Socialist political views, Black social issues, and/or because they criticized government practices and policies. Defendants thus denied and banned these publications and mail because they disliked or disagreed with the content of their speech, and because of their own racial and political animosities and prejudices.

76.     These defendants did not deny and ban these publications and mail because of any valid security concerns. They also violated IDOC policy in the manners in which they denied them.

77.     Defendants Williams, Zatecky, VanNatta and others allowed these defendants to bar and deny these publications and mail in the manner that they did, upheld these acts and refused to properly supervise and train them in the appropriate handling and screening of mail and publications at PCF.

- 18 -

AA-76

78. Among the publications these defendants denied delivery to plaintiff and banned were the August, October, November and December 2019 issues of San Francisco Bay View newspaper; two issues of the Welfare Warriors magazine, and two letters from its publishers, denied during December 2019; two Turning the Tide newspapers and a letter from its publisher, denied during June, July and October 2019; eight letters from Carole Seligman, editor of Socialist Viewpoint magazine, denied during May, July and December 2019 and January 2020; a letter from the publisher of Kersplebedeb publications, denied during January 2020; the January 2020 issue of San Francisco Bay View newspaper; a Spear and Shield newspaper, denied during July 2019; PSI publishers newspaper, denied during December 2019; several articles by author Rebecca Hensley from Louisiana Criminal Justice Network, denied October and November 2019, and many others.

79. Most all of these publications and mail were confiscated and banned upon the vague claim that they presented some unspecified "security risk," made by defendants Long, Wyatt, and/or Turney, who had defendant Chambers sign and send plaintiff written notices of these determinations.

80. These notices violated IDOC correspondence policy # 02-01-103, which requires that such notices specify what information the mail or publication contains that presents a security risk, such as, for example, information on use or construction of weapons, methods of escape from correctional facilities, etc. Chambers's notices to plaintiff did not contain any such specific information, nor did they ever state where in the mail or publications any supposed threatening content could be found.

AA-77

81.    In most of the cases where Chambers denied plaintiff's mail or publications, defendant Conyers refused to allow plaintiff to appeal the denials. All mail and publication denials must be appealed through the IDOC grievance procedure, which Conyers oversaw at PCF.

82.    Conyers refused plaintiff's appeal attempts in most instances by using ~~blanket~~ prior denials of mail or media as blanket bans on subsequent mail or publications, often banning subsequent mail and publications that had no relation at all to previously banned mail or publications. For example, Conyers cited the denial and plaintiff's prior appeal of a letter from Socialist Viewpoint publisher Carole Seligman, as basis to justify banning and refusing to allow him to appeal the subsequent denials of Turning the Tide newspaper on July 26, 2019, a subsequent letter from Ms. Seligman, a Spear and Shield newspaper denied on July 18, 2019, a mailing from San Francisco Bay View denied on July 8, 2019. Ms. Seligman has no connection whatsoever to Turning the Tide, Spear and Shield or San Francisco Bay View newspapers.

83.    In another example, defendant Conyers refused to allow plaintiff to appeal the denial of the December 2019 San Francisco Bay View on January 15, 2020, based on prior bans and plaintiff's appeal of a previous issue of the San Francisco Bay View. Defendant Chambers and Conyers banned plaintiff's mail and media and barred his appeals in this manner and as set out in the previous paragraph on many other occasions.

84.    The above defendants and defendants Carter and Zatecky do not provide for notice to the sender or publisher of mail or publications that their mail or publications have been banned and why, thus denying

- 20 -

those who are best suited to contest the denials the opportunity to be heard in opposition. See, for example the attached affidavit of San Francisco Bay View editor Mary Ratcliff. Exhibit A.

85.         Defendant Ferguson has also confirmed that the denials of plaintiff's mail and media in the manners stated above were invalid and against IDOC policy. He did this in response to the denials of his Militant newspapers.

86.         When the five issues of the Militant set out above were denied and banned, plaintiff informed the publishers, who in turn had their attorney lodge complaints with defendant Ferguson upon the grounds plaintiff presented above.

87.         As a result of the Militant's complaints, Ferguson overturned the bans and denials of all five issues of the newspaper and directed defendant Zatecky and his staff to deliver them to plaintiff. Ferguson also notified the newspaper's attorney in writing that the defendants who denied and banned the papers as a "security risk" had to be "retrained" in the correct handling of mail and media. This because Carter, Zatecky and others had failed to assure their proper training and supervision.

88.         As for the many other mail and publications that the defendants wrongfully banned, Ferguson didn't overturn them solely because there was no threat from a lawyer and lawfirm to sue IDOC officials on their senders' and publishers' behalves as in the case of the Militant.

– 21 –

AA-79

CLAIM VI

89.     Upon his PCF confinement on November 16, 2018, plaintiff was confined to segregation (solitary confinement) where he remained until March 2020. The bases used to speciously justify this confinement in long term solitary by defendants Reagle, Zatecky and Bodkin was plaintiff's allegedly having a detainer in Virginia (see Claim II) and his alleged STG affiliation (see Claim IV). Plaintiff didn't have and has never had any STG affiliation.

90.     Shortly after his PCF assignment, plaintiff was met with by defendants Long and Nelms, who admitted his solitary confinement was baseless, because most of the men in PCF's general population were allegedly STG affiliated and many had detainers.

91.     In PCF solitary plaintiff remained locked inside a small cell 24 hours per day, except for 5 one-hour periods in an outside exercise cage per week and 3 showers per week inside a small locked shower per week. Often outside exercise was cancelled for days to weeks due to alleged staff shortages. There were no programs nor other activities available in PCF solitary.

92.     The living conditions in PCF's solitary were constantly filthy and noisy. The "catwalk" area, which sits about four feet in front of the open front cells kept literal piles of trash in them, consisting of discarded styrofoam trays and commissary food packages with fermented food and food residue in them, and all manner of other trash. These areas were almost never cleaned and served as garbage disposal areas for the hundreds of men in the solitary unit.

93.     Plaintiff suffered severe mental and emotional pain and distress as a result of this solitary confinement, made worse by his preexisting mental health conditions. See Claim VII.

AA-80

- 22 -

## CLAIM XII

94.     Before his IDOC confinement plaintiff had been clinically diagnosed with severe depression and determined by mental health professionals to likely suffer post traumatic stress disorder.

95.     Plaintiff desired and sought mental health assessment, care and intervention by and from Wexford mental health staff at PCF including defendants Purdue, Easter-Rose, and Northcutt. All these defendants and mental health staff refused him all mental health care solely because plaintiff would not sign a form consenting to allow Wexford mental health staff to share what he discussed with them with ~~mental health~~ non-mental health IDOC officials.

96.     This 'consent' form, created by Wexford, states that the signer agrees to allowing mental health staff to share such discussion with non-medical staff that in their discretion presents a "threat to the orderly operation of the facility."

97.     Plaintiff found this discretionary criteria to be vague and overly broad and open to such interpretations as would allow Wexford mental health staff to share anything and everything he discussed with them with non-mental health IDOC staff. Plaintiff found this to be an unacceptable violation of his right to medical/mental health confidentiality.

98.     Plaintiff was thus denied all mental health care at PCF by the mental health defendants and all other Wexford mental health staff, simply because he would not sign said form, even though he specifically notified them that he was not declining mental health care and that he specifically wanted to receive such care.

AA-81

99.　　　　Wexford obtained the contract to provide medical and mental health care to men and women confined in IDOC during or about 2016. Before Wexford became the IDOC's medical and mental health contractor, noone in the IDOC had to sign any ~~consent form~~ such consent form nor was denied mental health care for not signing any such form. Also men and women confined in the IDOC before Wexford obtained the contract to provide medical and mental health care in the IDOC, are not required to sign the consent form which Wexford staff and defendants Purdue, Easter-Rose and Northcutt tried to compel plaintiff to sign, nor are they denied mental health care because of not signing the said form.

- 24 -

AA-82

## CLAIM VIII

100.   During latter 2019 and 2020 at PCF plaintiff was made to needlessly suffer excruciating dental pain and damage without care that the dental defendants Dr. Noll and Ingalls admitted he needed. He suffered this because defendants knowingly refused to have him brought to the PCF dental clinic in a timely manner, and they knowingly failed to use or make available the dental supplies and equipment needed to provide such care. On several occasions he was left up to three weeks with painful dental conditions without care or relief. Defendants' acts and omissions and plaintiff's suffering are described below.

101.   Several years prior to his PCF confinement, plaintiff had a painful hole filled by a dentist in his lower right cuspid at the front gumline.

102.   On December 8, 2019 this filling came out leaving a painful hole exposing the inside of his tooth. Plaintiff immediately filed a medical/dental care request and was seen in the PCF dental clinic on December 23, 2019 at which time defendant Ingalls enlarged and filled the hole in his tooth.

103.   On January 28, 2020 the filling that Ingalls put in plaintiff's tooth on December 23, 2019 came out while plaintiff was asleep, leaving an excruciatingly painful hole in his tooth. Plaintiff immediately submitted a medical/dental care request stating his situation, extreme pain, and need of dental care. Although defendants Ingalls and Dr. Noll received plaintiff's request promptly, they left him without care and in severe pain until February 20, 2020.

- 25 -

AA-83

104. On February 20, 2020 plaintiff was seen in the PCF dental clinic by defendants Noll and Ingall, both of whom admitted at that time that plaintiff's filling came out because Ingalls did not properly install it, and the reason she didn't properly fill his tooth was because the Idoc and Wexford would not provide working dental equipment to them that they needed to properly fill patients' teeth at PCF.

105. Specifically, they explained, the air hose machine that dentists use to dry and set fillings that Ingalls and Noll used in the PCF did not blow dry air, but instead blew out a spray of water. Because of this they could not dry filling material put into a patient's tooth so it would set and bond in the tooth correctly.

106. These defendants demonstrated to plaintiff using a dry paper towel, that the machine actually blew out water instead of dry air onto the paper towel.

107. Both defendants explained to plaintiff that they'd complained to defendant Carter, Zatecky and Wexford of their need of a working air hose system that blew dry air and not water, but they were not provided one and therefore continued to use the malfunctioning machine, which Ingalls proceeded to use to refill plaintiff's tooth for her second time, on that February 20, 2020 date.

108. Due to Ingalls's knowingly using the malfunctioning air hose machine to refill plaintiff's tooth, the filling came out yet again on March 3, 2020 causing him to suffer the painful open hole in his tooth again. Plaintiff again promptly filed a medical/dental care request stating his situation, pain, and need of dental care.

109. On March 16, 2020 plaintiff was seen again by Noll and Ingalls in the PCF dental clinic, where the hole in his tooth was enlarged even more and filled by defendant Noll.

AA-84

110. At that time both Noll and Ingalls again admitted that the filling came out because of their using the malfunctioning dental equipment to fill it on February 20, 2020.

111. Defendant Noll told plaintiff at this time he had to use several special "tricks" to enlarge and fill the hole in plaintiff's tooth to hopefully get the filling to stay in this time, but if it came out once more the entire tooth would likely have to be extracted. Plaintiff has since lived in constant fear and anxiety of the filling coming out again, causing him significant pain and his entire tooth to be pulled out.

112. But for the knowing use of faulty dental equipment in the PCF dental clinic by defendants Noll and Ingalls, and defendants Carter, Zatecky and Wexford failing to replace that equipment, plaintiff would not have endured the repeated pain of his filling coming out repeatedly and the hole in his tooth being enlarged and refilled over and over.

113. In a separate dental matter, plaintiff has had a cosmetic gold cap on his front left incisor since 1986. To install that cap, the original dentist filed plaintiff's tooth down considerably and created a large hole in the back of the tooth exposing the pulpy inside of the tooth. The cap was cemented in, serving in place of the enamel, to cover the filed-down tooth.

114. On May 19, 2020 the gold cap came off plaintiff's tooth, leaving a large portion of the inside of the tooth exposed to air, liquids and food, which caused him constant excruciating pain.

115. Although plaintiff submitted an immediate dental/health care request stating his situation, pain, and need of care, defendants Noll and Ingalls knowingly

failed to see him in the dental clinic until June 18, 2020, and only then because a media contact directed an inquiry and complaint to the IDOC ombudsman's office about plaintiff's dental situation. The ombudsman admitted in her reply that PCF's delays in providing dental care needed to be corrected.

116.     On June 18, 2020 Noll saw plaintiff in the PCF dental clinic and reinstalled the gold cap.

117.     At that time Noll admitted to plaintiff that the cap would likely come off again in less than 3 years, because he had to use a water based cement, due to the IDOC and Wexford not providing him the type of ~~epoxy~~ ~~epoxy~~ epoxy needed to insert the cap permanently and correctly. Noll explained that he'd requested but was not provided that ~~epoxy~~ epoxy in the past which was needed to permanently bond caps like plaintiff's, to his tooth.

118.     Plaintiff lives in constant anxiety and fear of his gold cap coming out again and causing him ~~the~~ extreme pain again because not reinstalled correctly using dental supplies admittedly needed by Noll.

119.     Defendants Noll, Wexford and Ingalls could have but did not refer plaintiff to a dental clinic at another IDOC facility or a private dentist to provide him the dental care ~~was~~ using dental equipment and supplies that they needed ~~to~~ but couldn't provide, ~~and reinstalled~~.

- 28 -

AA-86

## CLAIM IX

120. Because the cells in PCF's solitary confinement unit are open front, i.e. have barred fronts, tear gas freely and automatically enters and contaminates surrounding cells whenever it is used on any person confined in solitary. Especially because guards use large 12.5 ounce canisters and make no effort to confine the gas to the targeted person and cell.

121. In PCF solitary unit officers frequently abuse gas on its occupants, and defendants Carter, and Zatecky refuse to and fail to provide a system of evacuating gas from the cellhouse, decontaminating cells in which gas is sprayed or providing medical care or fresh air to those bystanders who are contaminated with gas when used.

122. When gas is used in PCF's solitary, it is allowed to linger in the cellhouse and is not evacuated by any exhaust system, sprayed cells are never decontaminated, and nothing is done to provide relief to contaminated bystanders.

123. Plaintiff suffered numerous bystander gas attacks without relief in this manner. One such incident occurred on July 8, 2019.

124. On that date and while plaintiff was on a telephone call inside his cell he observed an altercation between defendant J. Davis and another man locked in a cell two cells away from plaintiffs, named Charles Eldridge.

125. J. Davis claimed that Eldridge threw a liquid on him and walked away from the cell as if leaving the cellblock. Davis walked some 15 cells down the tier away from Eldridge's cell, becoming increasingly angry as he left. As he was about to leave off the tier

- 29 -

AA-87

Davis angrily removed a 12.5 ounce canister of gas from his equipment belt and stormed back down the tier to Eldridge's cell.

126. As B. J. Davis's reached Eldridge's cell he proceeded to spray gas in on Eldridge, while cursing and threatening to beat and kill Eldridge. J. Davis continuously sprayed and verbally abused Eldridge.

127. As J. Davis's continued this with no intentions to stop spraying gas, plaintiff spoke up telling him the gas was contaminating himself and others and to stop spraying it. J. Davis come to plaintiffs' cell as if he were going to spray him also.

128. Plaintiff told Davis his actions and verbal threats and abuse of Eldridge were being recorded on tier surveillance cameras and plaintiff's recorded phone call, hoping this would get Davis to stop spraying gas. Davis responded defiantly, " that plaintiff should get him fired then, and returned to Eldridge's cell and continued spraying and verbally abusing him until the gas canister was empty.

129. Plaintiff was heavily contaminated with gas and informed defendant J. Johnson that he needed fresh air and medical help. Johnson only replied that so much gas was sprayed that he too was contaminated while in another area of the solitary unit. No help was given to plaintiff and Eldridge's cell was never decontaminated. Plaintiff therefore suffered the painful burning effects of the gas and respiratory distress for days thereafter.

AA-88

CONCLUSION

Plaintiff swears to the truth of the foregoing facts under penalty of perjury and bases said facts on personal knowledge.

Plaintiff demands trial by jury on all issues so triable.

THEREFORE, plaintiff seeks the following relief from this court:

A.   Compensatory, Punitive and Nominal damages against each defendant jointly and severally in such sum in excess of $20 as a jury finds fair and just;

B.   Injunctive relief as found appropriate (preliminary and permanent);

C.   Pre- and post-judgment interest;

D.   Costs and fees;

E.   Judgment declaring plaintiff's rights and defendants' duties and their having violated those rights;

F.   Any further relief found fair and just.

Respectfully submitted,

Kevin Johnson, No. 264847
Wabash Valley Corr. Fac.
P. O. Box 1111
Carlisle, IN 47838

I hereby certify having hand-delivered a true copy of this document to IDOC officials for e-filing to the U.S. Dist. Court S. Dist. Indiana on this 13th day of November 2020.

- 31 -

AA-89

State of California

County of San Francisco

AFFIDAVIT

I, Mary Ratcliff, under oath state as follows:

1. I base this statement on personal knowledge.

2. I am the editor of the San Francisco Bay View newspaper, a monthly periodical, which has been in circulation since 1976.

3. Many prisoners across the United States and in Indiana subscribe to this paper, including Kevin Johnson.

4. I have been informed by Kevin Johnson that the July, August, September, October and November 2019 issues of the Bay View paper have been banned and denied delivery to him and others imprisoned in the Indiana Department of Corrections (IDOC).

5. No one working within the IDOC has ever notified me of the banning or denied delivery of any of the issues of the Bay View newspaper to IDOC inmates identified in paragraph 4 above. I have also not been allowed any opportunity to appeal the banning and denied delivery of this newspaper by IDOC officials.

6. I would not have known if I had not been informed by Bay View subscribers such as Kevin Johnson, who are incarcerated in the IDOC, that IDOC officials had banned and denied delivery of the newspaper to subscribers in the IDOC as identified above.

I swear to the truth of the foregoing facts under penalty of perjury.

Signature

*Mary Ratcliff*

Mary Ratcliff

4 - 10 - 2020

Exhibit A
AA-90

In The United States District Court

For The Southern District of Indiana

Indianapolis Division

FILED
07/27/2023
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

Kevin Johnson                                    Plaintiff,

v.    Case No. 1:21-cv-00201-JMS-MG

Martin Purdue, et al.,                           Defendants.

## NOTICE OF APPEAL

Plaintiff pro se hereby notes his appeal to the United States Appeals Court for the Seventh Circuit from the final ruling and judgment dismissing this action on June 22, 2023 and all rulings unfavorable to plaintiff herein.

Respectfully submitted,

Plaintiff pro se

Reply to: Kevin Johnson No. 1007485

VADOC Central Mail Distribution Center

3521 Woods Way

State Farm, VA 23160


## CERTIFICATE

I hereby certify having mailed this document by placing it into care of custodial officials for mailing postage prepaid on this 21st day of July, 2023 to: Clerk, U.S. District Court, 46 E. Ohio St., Indianapolis, IN 46204 and counsels.

Plaintiff pro se

MANDATE,CLOSED

# U.S. District Court
## Southern District of Indiana (Indianapolis)
## CIVIL DOCKET FOR CASE #: 1:21-cv-00201-JMS-MG

JOHNSON v. PURDUE et al
Assigned to: Judge Jane Magnus-Stinson
Referred to: Magistrate Judge Mario Garcia
Case in other court: 7th Circuit, 23-02478 - Mandate
Cause: 42:1983 Civil Rights Act

Date Filed: 01/25/2021
Date Terminated: 06/22/2023
Jury Demand: Both
Nature of Suit: 555 Prisoner Petitions -
Prison Condition
Jurisdiction: Federal Question

**Plaintiff**

**KEVIN JOHNSON**

represented by   **KEVIN JOHNSON**
1007485
Va DOC Central Mail Distribution Center
3521 Woods Way
State Farm, VA 23160
*PRO SE*

V.

**Defendant**

**MARTIN PURDUE**

represented by   **Douglass R. Bitner**
Stoll Keenon Ogden PLLC
The Emelie Building
334 N Senate Avenue
Indianapolis, IN 46204
317-464-1100
Fax: 317-464-1111
Email: doug.bitner@skofirm.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**EASTER-ROSE**
*Dr., Psychiatrist, PCF*

represented by   **Douglass R. Bitner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**NORTHCUTT**
*Ms., Mental Health Counselor, PCF*

represented by   **Douglass R. Bitner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**WEXFORD OF INDIANA L.C.C**

represented by   **Douglass R. Bitner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**NOLL**                                    represented by  **Douglass R. Bitner**
*Dr., Dentist, PCF*                                          (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**D. INGALLS**                              represented by  **Douglass R. Bitner**
*Dental Assistant, PCF*                                      (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**ROBERT CARTER**                           represented by  **Erica Lee Sawyer**
*Commissioner, Indiana Department of*                        INDIANA ATTORNEY GENERAL
*Corrections*                                                Indiana Government Center South, 5th
                                                            Floor
                                                            302 West Washington St.
                                                            Indianapolis, IN 46204-2770
                                                            317-232-6202
                                                            Fax: 317-232-7979
                                                            Email: Erica.Sawyer@atg.in.gov
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**DUSHAN ZATECKY**                          represented by  **Erica Lee Sawyer**
*Warden, Pendleton Correctional Facility*                    (See above for address)
*(PCF)*                                                      *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/25/2021 | 1 | COMPLAINT against ROBERT CARTER, EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, JOHN PURDUE, WEXFORD OF INDIANA L.C.C, DUSHAN ZATECKY, filed by KEVIN JOHNSON. (No fee paid with this filing) (Attachments: # 1 Affidavit in support of Complaint)(KAA) (Entered: 01/26/2021) |
| 01/25/2021 | 2 | Entry Severing Claims into Separate Action - The claims related to mental health and dental care are severed from the original complaint. To effectuate this ruling, a new civil action from the Indianapolis Division shall be opened, consistent with the following: See Order and 2:20-cv-602-JRS-MJD. Copy to Plaintiff via US Mail. Signed by Judge James R. Sweeney II on 1/25/2021.(KAA) (Entered: 01/26/2021) |
| 01/26/2021 | 3 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (KAA) (Entered: 01/26/2021) |
| 01/27/2021 | 4 | NOTICE to Pro se Litigant - The following information is provided to pro se litigants to inform them about rules and procedures governing how they communicate with the Court. Copy distributed to Plaintiff via US mail. (TMC) (Entered: 01/27/2021) |
| 02/04/2021 | 5 | NOTICE OF DEFICIENCY - Your civil rights complaint has been received. You shall have through March 4, 2021, in which to correct the deficiencies as follows: You must either pay the $402.00 filing fee for this action or demonstrate that you lack the financial ability to do so by filing a motion for leave to proceed without the prepayment of the filing fee *in forma pauperis*. (Copy sent to plaintiff via US Mail) (JRT) (Entered: 02/04/2021) |

| 02/17/2021 | 6 | MOTION for oral argument or evidentiary hearing, filed by Plaintiff KEVIN JOHNSON. (CBU) (Entered: 02/17/2021) |
| --- | --- | --- |
| 02/17/2021 | 7 | BRIEF in Support re 6 MOTION for Oral Argument, filed by Plaintiff KEVIN JOHNSON. (CBU) (Entered: 02/17/2021) |
| 02/17/2021 | 8 | MOTION to declare void and relief from judgments of conviction or for Temporary Restraining Order/Preliminary Injunction, filed by Plaintiff KEVIN JOHNSON. (CBU) (Entered: 02/17/2021) |
| 02/17/2021 | 9 | BRIEF in Support re 8 MOTION to declare void and relief from judgments of convictions or for TRO/PI, filed by Plaintiff KEVIN JOHNSON. (CBU) (Entered: 02/17/2021) |
| 02/19/2021 | 10 | ORDER Denying Motion to Declare Void and Relief from Judgment and Motion for Oral Argument. The motion, dkt. 8 , is denied because release from imprisonment is not the type of relief that is available in a civil rights case. Preiser v. Rodriguez, 411 U.S. 475, 499 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). The motion for oral argument, dkt. 6 , is denied because oral argument on this motion is unnecessary. Copy to Plaintiff via U.S. Mail. Signed by Judge Jane Magnus-Stinson on 2/19/2021. (MAC) (Entered: 02/19/2021) |
| 03/02/2021 | 11 | MOTION for Simultaneous Proceeding on Habeas Corpus, filed by Plaintiff KEVIN JOHNSON. (MAC) (Entered: 03/02/2021) |
| 03/04/2021 | 12 | ORDER denying Plaintiff's 11 Motion for leave to proceed in this civil rights case with habeas corpus claims against his custodian. The Court notes that the claims in this case were severed from those in Johnson v. Carter, et al., 2:20-cv-602-JRS-MJD. Dkt. 2. The claims in this case are Mr. Johnson's claims that he has received inadequate mental health and dental care. Id. He was given through March 4, 2021, to pay the $402.00 filing fee for this action or seek leave to proceed without pre-paying the filing fee. Mr. Johnson has not yet done so. He shall have through April 5, 2021, to pay the filing fee to seek leave to proceed in forma pauperis. The failure to do so will result in the dismissal of this action without further warning. (See Order). Copy to Plaintiff via U.S. Mail. Signed by Judge Jane Magnus-Stinson on 3/4/2021. (MAC) (Entered: 03/04/2021) |
| 03/08/2021 | 13 | MOTION to Proceed on Equity Action, filed by Plaintiff KEVIN JOHNSON. (MAC) (Entered: 03/08/2021) |
| 03/24/2021 | 14 | ORDER denying 13 Motion to proceed on equity action. For the same reasons his motion for simultaneous proceeding on habeas corpus was denied. As the Court has previously explained, the only way to challenge his conviction and seek release from custody is through a petition for a writ of habeas corpus. Regardless of how Mr. Johnson labels his filing or the relief he requests, if his motion amounts to a request for release from custody, such relief must be sought through a petition for a writ of habeas corpus. Finally, the Court notes that Mr. Johnson still has not paid the filing fee or shown that he is entitled to proceed in forma pauperis as directed. He has been given through April 5, 2021, to do so. If he fails to do so, this action will be dismissed. (Copy to Plaintiff via U.S. mail). Signed by Judge Jane Magnus-Stinson on 3/24/2021. (JDC) (Entered: 03/24/2021) |
| 04/05/2021 | 15 | Reassignment of Case to Magistrate Judge Mario Garcia. Magistrate Judge Debra McVicker Lynch is no longer assigned to this case. Please include the new case number (1:21-cv-201-JMS-MG), which includes the initials of the newly assigned judge, on all future filings in this matter. (JDad) (Entered: 04/05/2021) |
| 04/05/2021 | 16 | NOTICE of certification of filing fee request made filed by Plaintiff KEVIN JOHNSON |

AA-94

| 04/07/2021 | 17 | MOTION to Dispense with Filing Fee, filed by Plaintiff KEVIN JOHNSON. (MAC) (Entered: 04/08/2021) |
|---|---|---|
| 04/09/2021 | 18 | RECEIPT #IP073418 for filing fee in the amount of $402.00, paid by Plaintiff. (REO) (Entered: 04/09/2021) |
| 04/14/2021 | 19 | CONSENT to Prisoner E-Service by KEVIN JOHNSON located at WVCF. Pursuant to General Order 2013-1, documents submitted by KEVIN JOHNSON to the court for filing will generate a Notice of Electronic Filing that will constitute official service upon registered users of CM/ECF. If any parties to the case are not registered CM/ECF users, the Clerk of the Court will mail the document via U.S. Postal Service on behalf of the inmate. **NOTE: The E-Filing Program does not affect the obligation of other parties to serve copies of documents in accordance with the Federal Rules of Civil Procedure.** (JDC) (Entered: 04/15/2021) |
| 04/22/2021 | 20 | ORDER Screening Complaint and Directing Further Proceedings. Based on the screening standard set forth above, these claims shall proceed as claims that the defendants were deliberately indifferent to Mr. Johnson's serious medical needs in violation of his Eighth Amendment rights. The claims against Wexford shall proceed claims that Mr. Johnson's injuries were the result of a policy, practice, or custom on Wexford's part. This summary of claims includes all of the viable claims identified by the Court. If the plaintiff believes that additional claims were alleged in the Complaint, but not identified by the Court, he shall have through May 20, 2021, in which to identify those claims. The clerk is directed pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to the defendants in the manner specified by Rule 4(d). Process shall consist of the complaint, dkt. 1 , applicable forms (Notice of Lawsuit and Request for Wavier of Service of Summons and Waiver of Service of Summons), and this Order. Mr. Johnson's motion to dispense with filing fee, dkt. 17 , is denied as unnecessary because he has paid the filing fee. Defendants Dr. Noll, D. Ingalls, Dr. Easter-Rose, John Purdue, and Ms. Northcutt are understood to be employees of Wexford of Indiana, LLC. A copy of this Order and the process documents shall also be served on Wexford electronically. Wexford is ORDERED to provide the full name and last known home address of any defendant who does not waive service if they have such information. This information may be provided to the Court informally or may be filed ex parte. (See Order). Copies mailed to parties listed in distribution portion of this entry. Signed by Judge Jane Magnus-Stinson on 4/22/2021. (MAC) (Entered: 04/22/2021) |
| 04/22/2021 | 21 | NOTICE of Lawsuit & Waiver Issued by Clerk to: 1) John Purdue; 2) Dr. Easter-Rose 3) Ms. Northcutt; 4) Dr. Noll; 5) D. Ingalls; 6) Wexford of Indiana, LLC; 7) Robert Carter; 8) Dushan Zatecky. (MAC) (Entered: 04/22/2021) |
| 04/22/2021 | 22 | Documents to be Sent via Electronic Notice - re 21 NOTICE of Lawsuit & Waiver Issued by Clerk, 20 Order on Motion, 1 Complaint. Electronic Notice to IDOC and Wexford. (MAC) (Entered: 04/22/2021) |
| 05/14/2021 | 23 | Mail Returned as undeliverable. 21 NOTICE of Lawsuit & Waiver Issued by Clerk, 20 Order on Motion, 1 Complaint sent to EASTER-ROSE, Medical Employee, Wabash Valley Correctional Facility. (Return to Sender). (MAC) (Entered: 05/17/2021) |
| 05/14/2021 | 24 | Mail Returned as undeliverable. 21 NOTICE of Lawsuit & Waiver Issued by Clerk, 20 Order on Motion, 1 Complaint sent to D. INGALLS, Medical Employee, Wabash Valley Correctional Facility. (Return to Sender). (MAC) (Entered: 05/17/2021) |
| 05/14/2021 | 25 | Mail Returned as undeliverable. 21 NOTICE of Lawsuit & Waiver Issued by Clerk, 20 Order on Motion, 1 Complaint sent to Dr. NOLL, Medical Employee, Wabash Valley Correctional Facility. (Return to Sender). (MAC) (Entered: 05/17/2021) |

AA-95

Case: 23-2478      Document: 28      Filed: 03/22/2024      Pages: 105

| 05/14/2021 | 26 | Mail Returned as undeliverable. 21 NOTICE of Lawsuit & Waiver Issued by Clerk, 20 Order on Motion, 1 Complaint sent to NORTHCUTT, Medical Employee, Wabash Valley Correctional Facility. (Return to Sender). (MAC) (Entered: 05/17/2021) |
|---|---|---|
| 05/14/2021 | 27 | Mail Returned as undeliverable. 21 NOTICE of Lawsuit & Waiver Issued by Clerk, 20 Order on Motion, 1 Complaint sent to JOHN PURDUE, Medical Employee, Wabash Valley Correctional Facility. (Return to Sender). (MAC) (Entered: 05/17/2021) |
| 05/19/2021 | 28 | ORDER Directing Reissuance of Service-The clerk is again directed pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendants Purdue, Easter-Rose, Northcutt, Ingalls, and Noll in the manner specified by Rule 4(d). Process shall consist of the complaint, dkt. 1 , applicable forms (Notice of Lawsuit and Request for Wavier of Service of Summons and Waiver of Service of Summons), the Order of April, 22, 2021, dkt. 20 , and this Order. Signed by Magistrate Judge Mario Garcia on 5/19/2021.(CBU) (Entered: 05/19/2021) |
| 05/19/2021 | 29 | NOTICE of Lawsuit & Waiver Issued by Clerk as to 1) John Purdue; 2) Dr. Easter-Rose; 3) Ms. Northcutt; 4) Dr. Noll and 5) D. Ingalls (CBU) (Entered: 05/19/2021) |
| 05/20/2021 | 30 | WAIVER OF SERVICE Returned Executed, filed by WEXFORD OF INDIANA L.C.C. WEXFORD OF INDIANA L.C.C waiver sent on 4/22/2021. (Steuerwald, Erika) (Entered: 05/20/2021) |
| 05/20/2021 | 31 | WAIVER OF SERVICE Returned Executed, filed by NOLL, EASTER-ROSE, D. INGALLS, NORTHCUTT. NOLL waiver sent on 4/22/2021; EASTER-ROSE waiver sent on 4/22/2021; D. INGALLS waiver sent on 4/22/2021; NORTHCUTT waiver sent on 4/22/2021. (Steuerwald, Erika) (Entered: 05/20/2021) |
| 05/20/2021 | 32 | NOTICE of Appearance by Erika Lauren Steuerwald on behalf of Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, WEXFORD OF INDIANA L.C.C. (Steuerwald, Erika) (Entered: 05/20/2021) |
| 05/20/2021 | 33 | Corporate Disclosure Statement by WEXFORD OF INDIANA L.C.C. (Steuerwald, Erika) (Entered: 05/20/2021) |
| 05/20/2021 | 34 | NOTICE of Appearance by Douglass R. Bitner on behalf of Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, WEXFORD OF INDIANA L.C.C. (Bitner, Douglass) (Entered: 05/20/2021) |
| 05/24/2021 | 35 | NOTICE of Appearance by W. Andrew Kirtley on behalf of Defendants ROBERT CARTER, DUSHAN ZATECKY. (Kirtley, W.) (Entered: 05/24/2021) |
| 05/24/2021 | 36 | WAIVER OF SERVICE Returned Executed, filed by DUSHAN ZATECKY, ROBERT CARTER. DUSHAN ZATECKY waiver sent on 4/22/2021; ROBERT CARTER waiver sent on 4/22/2021. (Kirtley, W.) (Entered: 05/24/2021) |
| 05/24/2021 | 37 | NOTICE of Appearance by Zachary Robert Griffin on behalf of Defendants ROBERT CARTER, DUSHAN ZATECKY. (Griffin, Zachary) (Entered: 05/24/2021) |
| 05/24/2021 | 38 | MOTION to Redirect Notice of Lawsuit and Request to Waive Service, filed by Plaintiff KEVIN JOHNSON. (MAC) (Entered: 05/24/2021) |
| 06/02/2021 | 39 | Mail Returned as undeliverable. 28 Order, 29 NOTICE of Lawsuit & Waiver Issued by Clerk sent to NOLL at Pendleton Correctional Facility. Return to Sender, No longer here. (MAC) (Entered: 06/03/2021) |
| 06/02/2021 | 40 | Mail Returned as undeliverable. 28 Order, 29 NOTICE of Lawsuit & Waiver Issued by Clerk sent to EASTER-ROSE at Pendleton Correctional Facility. Return to Sender, no longer here. (MAC) (Entered: 06/03/2021) |

AA-96

Case: 23-2478     Document: 28     Filed: 03/22/2024     Pages: 105

| | | |
|---|---|---|
| 06/07/2021 | 41 | Mail Returned as undeliverable. 28 Order, 29 NOTICE of Lawsuit & Waiver Issued by Clerk sent to D. INGALLS. (RETURN TO SENDER UNABLE TO FORWARD) (CKM) (Entered: 06/08/2021) |
| 06/07/2021 | 42 | Mail Returned as undeliverable. 28 Order, 29 NOTICE of Lawsuit & Waiver Issued by Clerk sent to NORTHCUTT. (RETURN TO SENDER UNABLE TO FORWARD) (CKM) (Entered: 06/08/2021) |
| 06/14/2021 | 43 | ORDER denying as moot 38 Motion to reissue service because the defendants have since been served. Signed by Magistrate Judge Mario Garcia on 6/14/2021. (CBU) (Entered: 06/14/2021) |
| 06/15/2021 | 44 | Mail Returned as undeliverable. 21 NOTICE of Lawsuit & Waiver Issued by Clerk, 20 Order on Motion sent to WEXFORD OF INDIANA L.C.C. (Return to Sender). (MAC) Modified on 6/16/2021 (MAC). (Entered: 06/16/2021) |
| 06/15/2021 | 45 | Mail Returned as undeliverable. 21 NOTICE of Lawsuit & Waiver Issued by Clerk, 20 Order on Motion sent to JOHN PURDUE at Wabash Valley Correctional Facility. (Return to Sender not at address). (MAC) (Entered: 06/16/2021) |
| 06/21/2021 | 46 | *State Defendants*' ANSWER to 1 Complaint *and Affirmative Defenses*, filed by ROBERT CARTER, DUSHAN ZATECKY.(Kirtley, W.) (Entered: 06/21/2021) |
| 06/21/2021 | 47 | NOTICE of Parties' First Extension of Time re Filing a response to pleading defined by Fed. R. Civ. P. 7(a), filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, WEXFORD OF INDIANA L.C.C. (Steuerwald, Erika) (Entered: 06/21/2021) |
| 06/23/2021 | 48 | MOTION for Reconsideration re 43 Order Denying Motion, filed by Plaintiff KEVIN JOHNSON. (MAC) (Entered: 06/23/2021) |
| 06/30/2021 | 49 | ANSWER to 1 Complaint , *Jury Demand and Affirmative Defenses*, filed by EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, WEXFORD OF INDIANA L.C.C. (Steuerwald, Erika) (Entered: 06/30/2021) |
| 07/08/2021 | 50 | Objection to, re 47 NOTICE of Parties' First Extension of Time, filed by Plaintiff KEVIN JOHNSON. (MAC) (Entered: 07/08/2021) |
| 07/12/2021 | 51 | Mail Returned as undeliverable. 50 Response sent to KEVIN JOHNSON. (NEF Returned from Wabash Valley. Transferred out of state and will not return). (MAC) Modified on 7/14/2021 - no new address reported (TMC). (Entered: 07/13/2021) |
| 07/12/2021 | 52 | ORDER Directing Reissuance of Service - Notice of Lawsuit and Request to Waive Service of a Summons forms sent to defendant John Purdue have not been returned. The clerk is directed pursuant to Fed. R. Civ. P. 4(c)(3) to reissue process to defendant Purdue. Process shall consist of the complaint, dkt. 1 , applicable forms (Notice of Lawsuit and Request for Wavier of Service of Summons and Waiver of Service of Summons), the Order of April 22, 2021, dkt. 20 , and this Order. The motion for reconsideration, dkt. [ 48 ], is granted consistent with this Order. Copy to Plaintiff and John Purdue via US Mail. Signed by Magistrate Judge Mario Garcia on 7/12/2021. (SWM) (Entered: 07/14/2021) |
| 07/14/2021 | 53 | NOTICE of Lawsuit & Waiver Issued by Clerk TO: John Purdue. Copy to John Purdue via US Mail (SWM) (Entered: 07/14/2021) |
| 07/20/2021 | 54 | ORDER SETTING PRETRIAL SCHEDULE AND DISCUSSING DISCOVERY IN PRISONER LITIGATION: This Order sets the schedule for how this action shall proceed. Part I sets forth the pretrial deadlines. Part II discusses various aspects of discovery. Facilitating the discovery process can be difficult, and this Order is issued in an effort to help explain and streamline the process for the parties. The parties should carefully read |

AA-97

Case 3:04-cv-00769... *SEE ORDER FOR ADDITIONAL INFORMATION* Page 105

| | | this Order. *SEE ORDER FOR ADDITIONAL INFORMATION* Dispositive Motions due by 2/21/2022. Discovery due by 1/20/2022. Signed by Magistrate Judge Mario Garcia on 7/20/2021 Copy sent to Kevin Johnson via US Mail(CBU) (Entered: 07/21/2021) |
|---|---|---|
| 07/26/2021 | 56 | NOTICE of Change of Address and Notice of Loss of Property for KEVIN JOHNSON. (Attachments: # 1 Envelope). (MAC) (Entered: 07/29/2021) |
| 07/26/2021 | 57 | REQUEST for Production of Documents from Defendant Carter, filed by Plaintiff KEVIN JOHNSON. (Attachments: # 1 Envelope). (MAC) (Entered: 07/29/2021) |
| 07/28/2021 | 55 | Address updated for Kevin Johnson from Wabash Valley Correctional Facility to Correctional Reception Center. DOC number also updated from 264874 to A787991. (JRT) (Entered: 07/28/2021) |
| 07/29/2021 | 58 | Mail Returned as undeliverable. 52 Order on Motion for Reconsideration, 53 NOTICE of Lawsuit & Waiver Issued by Clerk sent to JOHN PURDUE (Return to Sender-Do Not Know Who This Is?) (CBU) (Entered: 08/02/2021) |
| 08/02/2021 | 59 | MOTION for Intervention and for Hearing, filed by Plaintiff KEVIN JOHNSON. (MAC) (Entered: 08/04/2021) |
| 08/12/2021 | 61 | NOTICE of Change of Address for KEVIN JOHNSON. (Attachments: # 1 Envelope). (MAC) (Entered: 08/16/2021) |
| 08/16/2021 | 60 | RESPONSE in Opposition re 59 MOTION *for Intervention and for Hearing*, filed by Defendants ROBERT CARTER, DUSHAN ZATECKY. (Kirtley, W.) (Entered: 08/16/2021) |
| 08/18/2021 | 62 | RESPONSE in Opposition re 59 MOTION *for Intervention and for Hearing*, filed by Defendants ROBERT CARTER, DUSHAN ZATECKY. (Kirtley, W.) (Entered: 08/18/2021) |
| 09/01/2021 | 63 | REPLY in Support of Motion re 59 MOTION for Intervention and for Hearing, filed by Plaintiff KEVIN JOHNSON. (Attachments: # 1 Exhibit, # 2 Envelope). (MAC) (Entered: 09/02/2021) |
| 09/03/2021 | 64 | ORDER regarding service on Defendant John Purdue. Notice of Lawsuit and Request to Waive Service of a Summons forms sent to defendant John Purdue have not been returned. The plaintiff has identified Purdue as a mental health provider. Accordingly, counsel for the medical defendants is requested to provide an address at which Purdue can be served. This filing may be made ex parte. Counsel is requested to do so by September 20, 2021. Signed by Magistrate Judge Mario Garcia on 9/3/2021 Copy sent to Kevin Johnson via US Mail(CBU) (Entered: 09/03/2021) |
| 09/14/2021 | 65 | NOTICE of Service of Initial Disclosures , filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, WEXFORD OF INDIANA L.C.C. (Steuerwald, Erika) (Entered: 09/14/2021) |
| 09/16/2021 | 67 | NOTICE from Plaintiff of Mail Seized, filed by Plaintiff KEVIN JOHNSON (Attachments: # 1 Envelope) (KAA) (Entered: 09/17/2021) |
| 09/20/2021 | 68 | NOTICE of Service of Initial Disclosures *for Discovery*, filed by Defendants ROBERT CARTER, DUSHAN ZATECKY. (Kirtley, W.) (Entered: 09/20/2021) |
| 10/05/2021 | 69 | ORDER discussing notice of mail seized and service on Defendant John Purdue (See Order). Signed by Magistrate Judge Mario Garcia on 10/5/2021 Copy sent to Mr. Johnson via US Mail (CBU) (Entered: 10/05/2021) |
| 10/18/2021 | 71 | NOTICE of Change of Address for KEVIN JOHNSON. (Attachments: # 1 Envelope). (MAC) (Entered: 10/20/2021) |

Case: 23-2478     Document: 28     Filed: 03/22/2024     Pages: 105

| | | |
|---|---|---|
| 10/20/2021 | 70 | ORDER directing change of address and Response from plaintiff regarding motion for intervention and for hearing. The clerk shall update the docket to reflect Mr. Johnson's address as shown in the Distribution of this Order. In addition, Mr. Johnson shall notify the Court by November 15, 2021, whether he has received his property. Signed by Magistrate Judge Mario Garcia on 10/20/2021 Copy sent to Mr. Johnson via US Mail(CBU) (Entered: 10/20/2021) |
| 10/21/2021 | 72 | ORDER Regarding Service on Defendant Purdue. Mr. Johnson continues to have through November 3, 2021, to provide further information regarding the defendant he identifies as John Purdue so that the Court may complete service on the intended defendant. Signed by Magistrate Judge Mario Garcia on 10/21/2021 Copy sent to Mr. Johnson via US Mail(CBU) (Entered: 10/21/2021) |
| 11/04/2021 | 73 | MOTION to Take Deposition from Kevin Johnson , filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, WEXFORD OF INDIANA L.C.C. (Attachments: # 1 Notice of Deposition, # 2 Text of Proposed Order)(Steuerwald, Erika) (Entered: 11/04/2021) |
| 11/09/2021 | 74 | ORDER granting Defendants' 73 Motion to Take Deposition from KEVIN JOHNSON. Copy to Plaintiff via US Mail. Signed by Magistrate Judge Mario Garcia on 11/9/2021. (SWM) (Entered: 11/09/2021) |
| 11/15/2021 | 75 | Mail Returned as undeliverable. 69 Order sent to KEVIN JOHNSON at Southern Ohio Correctional Facility, P.O. Box 45699, Lucasville, OH 45699. (Return to Sender, Released). (MAC) (Entered: 11/16/2021) |
| 11/17/2021 | 76 | Docket 69 resent to Plaintiff KEVIN JOHNSON at Nottoway Correctional Center based on most recent NOTICE OF CHANGE OF ADDRESS at Dkt. 71 . (TMC) (Entered: 11/17/2021) |
| 11/19/2021 | 78 | MOTION Concerning Orders 70 and 72 , filed by Plaintiff KEVIN JOHNSON. (Attachments: # 1 Envelope). (MAC) (Entered: 11/22/2021) |
| 11/22/2021 | 77 | NOTICE of Service of Expert Disclosures, filed by Defendants EASTER-ROSE, D. INGALLS, NORTHCUTT, WEXFORD OF INDIANA L.C.C (Bitner, Douglass) (Entered: 11/22/2021) |
| 11/22/2021 | 79 | NOTICE of Expert Disclosures, filed by Defendants ROBERT CARTER, DUSHAN ZATECKY, re 54 Order Setting Pretrial Schedule and Discussing Discovery in Prisoner Litigation. (Kirtley, W.) (Entered: 11/22/2021) |
| 11/29/2021 | 80 | ORDER - Granting Motion Concerning Orders, Denying Motion for Intervention and Hearing as Moot, Extending Deadlines, and Directing Service on Defendant Purdue; Mr. Johnson's motion concerning orders, dkt. 78 , is granted consistent with the following. Mr. Johnson's motion for intervention and hearing, dkt. 59 , is denied as moot. The parties shall have through February 25, 2022, to complete discovery. The parties shall have through March 25, 2022, to file dispositive motions. If Mr. Johnson wishes to request the extension of any other deadline, he may file a motion identifying the specific deadline for which he seeks an extension. Mr. Johnson's request for a copy of docket 51 is denied because that docket entry is simply a copy of an envelope sent to him and returned undelivered. Finally, the clerk shall amend the docket to reflect defendant John Purdue is named Martin Purdue. The clerk is directed pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendant Purdue in the manner specified by Rule 4(d). Process shall consist of the complaint, dkt. 1 , the Order of April 22, 2021, dkt. 20 , applicable forms (Notice of Lawsuit and Request for Wavier of Service of Summons and Waiver of Service of Summons), and this Order. Further, a copy of this Order and the process documents shall also be served on Wexford, LLC electronically. Wexford is ORDERED to provide the full |

AA-99

name and last known home address of any defendant who does not waive service if they
have such information. This information may be provided to the Court informally or may
be filed ex parte. Further, to help expedite service on this defendant, counsel for the State
Defendants is requested to report whether there is any current or former State employee
named Martin Purdue and provide an address at which he can be served. This filing may
be made ex parte. Signed by Magistrate Judge Mario Garcia on 11/29/2021. Copies
Mailed.(CKM) (Entered: 11/29/2021)

| Date | No. | Description |
|---|---|---|
| 11/29/2021 | 81 | NOTICE of Lawsuit & Waiver Issued by Clerk as to Martin Purdue. (CKM) (Entered: 11/29/2021) |
| 11/29/2021 | 82 | Documents to be Sent via Electronic Notice - re 80 Order, 20 Order on Motion, 81 NOTICE of Lawsuit & Waiver Issued by Clerk, 1 Complaint, [1-1] Affidavit of Compliant Electronic Notice to Wexford. (Attachments: # 1 Affidavit, # 2 dkt 20 order, # 3 dkt 80 order, # 4 Notice of Lawsuit and Waiver)(CKM) (Entered: 11/29/2021) |
| 12/15/2021 | 84 | WAIVER OF SERVICE Returned Executed, filed by MARTIN PURDUE. MARTIN PURDUE waiver sent on 11/29/2021. (Steuerwald, Erika) (Entered: 12/15/2021) |
| 12/15/2021 | 85 | NOTICE of Appearance by Erika Lauren Steuerwald on behalf of Defendant MARTIN PURDUE. (Steuerwald, Erika) (Entered: 12/15/2021) |
| 12/15/2021 | 86 | NOTICE of Appearance by Douglass R. Bitner on behalf of Defendant MARTIN PURDUE. (Bitner, Douglass) (Entered: 12/15/2021) |
| 12/20/2021 | 87 | *Amended* ANSWER to 1 Complaint , *Jury Demand and Affirmative Defenses*, filed by EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C.(Steuerwald, Erika) (Entered: 12/20/2021) |
| 12/21/2021 | 88 | ORDER - Defendant Martin Purdue has appeared and answered. This action shall continue to proceed as set forth in the Order Setting Pretrial Schedule and Discussing Discovery in Prisoner Litigation. Dkt. 54 . Copy to Plaintiff via US Mail. Signed by Magistrate Judge Mario Garcia on 12/21/2021.(NAD) (Entered: 12/21/2021) |
| 01/26/2022 | 89 | ***PLEASE DISREGARD ENTERED IN ERROR, SEE CORRECTION AT DKT 90 ***NOTICE of Taking Deposition by EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C (Steuerwald, Erika) Modified on 1/26/2022 (NAD). (Entered: 01/26/2022) |
| 01/26/2022 | 90 | NOTICE *of Deposition (CORRECTED)*, filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C, re 89 NOTICE of Taking Deposition. (Steuerwald, Erika) (Entered: 01/26/2022) |
| 02/07/2022 | 91 | MINUTE ORDER for proceedings held before Magistrate Judge Mario Garcia: Discovery Conference held on 2/7/2022. The parties appeared for a telephonic discovery conference. Plaintiff in Pro Se and Defendants by counsel. Court hears argument from parties over disputes and gives guidance on how the deposition may proceed. Defendants to provide Plaintiff with 30 days to file for any protective order before publishing or disclosing deposition transcript to third-parties and in relation to this proceeding unless leave is granted. Copy to Plaintiff via US Mail. Signed by Magistrate Judge Mario Garcia. (NAD) (Entered: 02/07/2022) |
| 03/25/2022 | 92 | Joint MOTION for Extension of Time to April 15, 2022 *to File Dispositive Motions*, filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C. (Attachments: # 1 Text of Proposed Order) (Steuerwald, Erika) (Entered: 03/25/2022) |
| 03/30/2022 | 93 | ORDER Granting Motion for Extension of Time - The defendants' motion for an extension of time, dkt. [ 92 ], is granted. The parties shall have through April 15, 2022, to |

AA-100

Case: 23-2478    Document: 29    Filed: 03/20/2024    Pages: 105

| | | |
|---|---|---|
| | | file dispositive motions. Copy to Plaintiff via US Mail. Signed by Magistrate Judge Mario Garcia on 3/30/2022.(SWM) (Entered: 03/30/2022) |
| 04/14/2022 | 94 | MOTION for Summary Judgment , filed by Defendants ROBERT CARTER, DUSHAN ZATECKY. (Attachments: # 1 Exhibit Deposition of Kevin Johnson, # 2 Affidavit Declaration of Robert Carter, # 3 Affidavit Declaration of Dushan Zatecky, # 4 Exhibit Grievance)(Kirtley, W.) (Entered: 04/14/2022) |
| 04/14/2022 | 95 | BRIEF/MEMORANDUM in Support re 94 MOTION for Summary Judgment , filed by Defendants ROBERT CARTER, DUSHAN ZATECKY. (Kirtley, W.) (Entered: 04/14/2022) |
| 04/14/2022 | 96 | NOTICE *of Summary Judgment Motion*, filed by Defendants ROBERT CARTER, DUSHAN ZATECKY (Kirtley, W.) (Entered: 04/14/2022) |
| 04/14/2022 | 97 | MOTION to Withdraw Attorney Appearance *of Zachary Griffin*, filed by Defendants ROBERT CARTER, DUSHAN ZATECKY. (Attachments: # 1 Text of Proposed Order Granting Motion to Withdraw)(Kirtley, W.) (Entered: 04/14/2022) |
| 04/15/2022 | 98 | Second MOTION for Extension of Time to April 29, 2022 *to File Dispositive Motions*, filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C. (Attachments: # 1 Text of Proposed Order) (Steuerwald, Erika) (Entered: 04/15/2022) |
| 04/19/2022 | 99 | ORDER - granting 97 Motion to Withdraw Attorney Appearance. Attorney Zachary Robert Griffin withdrawn. Copy to Plaintiff via US Mail. Signed by Magistrate Judge Mario Garcia on 4/19/2022. (NAD) (Entered: 04/19/2022) |
| 04/19/2022 | 100 | ORDER - granting Defendants' 98 Motion for Extension of Time. IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Defendants' Motion for Extension of Time to complete and file dispositive motions, up to and including April 29, 2022, should be and is hereby GRANTED. Copy to Plaintiff via US Mail. Signed by Magistrate Judge Mario Garcia on 4/19/2022.(NAD) (Entered: 04/19/2022) |
| 04/29/2022 | 101 | Third MOTION for Extension of Time to May 20, 2022 *to File Dispositive Motions*, filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C. (Attachments: # 1 Text of Proposed Order)(Steuerwald, Erika) (Entered: 04/29/2022) |
| 05/03/2022 | 102 | ORDER - granting 101 Motion for Extension of Time. IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Defendants' Motion for Extension of Time to complete and file dispositive motions, up to and including May 20, 2022, dkt. 101 , should be and is hereby GRANTED. Copy to Plaintiff via US Mail. Signed by Magistrate Judge Mario Garcia on 5/3/2022.(NAD) (Entered: 05/04/2022) |
| 05/20/2022 | 103 | Final MOTION for Extension of Time to June 3, 2022 *to File Dispositive Motions*, filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C. (Attachments: # 1 Text of Proposed Order) (Steuerwald, Erika) (Entered: 05/20/2022) |
| 05/25/2022 | 104 | ORDER - granting 103 Motion for Extension of Time. IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Defendants' Motion for Extension of Time to complete and file dispositive motions, up to and including June 3, 2022, should be and is hereby GRANTED. Copy to Plaintiff via US Mail. Signed by Magistrate Judge Mario Garcia on 5/25/2022.(NAD) (Entered: 05/25/2022) |
| 06/02/2022 | 105 | MOTION for Summary Judgment , filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C. |

AA-101

| 06/02/2022 | 106 | BRIEF/MEMORANDUM in Support re 105 MOTION for Summary Judgment , filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C. (Steuerwald, Erika) (Entered: 06/02/2022) |
|---|---|---|
| 06/02/2022 | 107 | Designation of Evidence re 106 Brief/Memorandum in Support , filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C. (Attachments: # 1 Exhibit A - Affidavit of Gregg Noll, DDS (Executed), # 2 Exhibit B - Dental Records, # 3 Exhibit C - Medical Records (Redacted), # 4 Exhibit D - Affidavit of Ciemone Easter-Rose, PhD HSPP (Executed), # 5 Exhibit E - HSDC 4.03A - Adult MH Services 5-1-2019, # 6 Exhibit F - Mental Health Services Consent for Treatment, # 7 Exhibit G - IDOC HCSD 1.13A - Privacy of Care 1-1-2018, # 8 Exhibit H - Deposition Transcript of Kevin Johnson [94-1])(Steuerwald, Erika) (Entered: 06/02/2022) |
| 06/02/2022 | 108 | NOTICE *of Right to Reply*, filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C, re 105 MOTION for Summary Judgment . (Steuerwald, Erika) (Entered: 06/02/2022) |
| 06/02/2022 | 109 | NOTICE *of Service of First Supplement to Initial Disclosures*, filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C (Steuerwald, Erika) (Entered: 06/02/2022) |
| 06/13/2022 | 110 | NOTICE of Substitution of Appearance by Sarah Jean Shores-Scisney replacing *Erika J. Steuerwald* on behalf of EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C (Shores-Scisney, Sarah) (Entered: 06/13/2022) |
| 07/20/2022 | 111 | NOTICE of Change of Attorney Information. Consistent with Local Rule 5-3, Douglass R. Bitner hereby notifies the Clerk of the court of changed contact information. (Bitner, Douglass) (Entered: 07/20/2022) |
| 07/20/2022 | 112 | NOTICE of Change of Attorney Information. Consistent with Local Rule 5-3, Sarah Jean Shores-Scisney hereby notifies the Clerk of the court of changed contact information. (Shores-Scisney, Sarah) (Entered: 07/20/2022) |
| 07/28/2022 | 113 | NOTICE of Substitution of Appearance by Erica Lee Sawyer replacing *W. Andrew Kirtley* on behalf of ROBERT CARTER, DUSHAN ZATECKY (Sawyer, Erica) (Entered: 07/28/2022) |
| 10/17/2022 | 114 | NOTICE of Change of Address for KEVIN JOHNSON. Address updated from Nottoway Correctional Center to Sussex 1 State Prison. (Attachments: # 1 Envelope) (JSR) (Entered: 10/18/2022) |
| 10/24/2022 | 115 | NOTICE to the Court and Copy Request, filed by Plaintiff KEVIN JOHNSON (Attachments: # 1 Cover Letter, # 2 Exhibit Letters, # 3 Envelope, # 4 Public Docket Sheet) Copy of Public Docket Sheet to Plaintiff via US mail. (JSR) (Entered: 10/25/2022) |
| 11/07/2022 | 116 | Correspondence REQUESTING COPY of Case Docket Sheet, filed by KEVIN JOHNSON. Copy provided via US Mail. (Attachments: # 1 Envelope, # 2 Public Docket Sheet) (JSR) (Entered: 11/08/2022) |
| 12/01/2022 | 117 | Mail Returned as undeliverable. 116 Copy Request sent to KEVIN JOHNSON: 24414 Musselwhite Dr., Waverly, VA 23891; unable to forward. (JSR) (Entered: 12/02/2022) |
| 12/05/2022 | 119 | NOTICE of Change of Address for KEVIN JOHNSON. Address updated from Sussex 1 State Prison to Va DOC Central Mail Distribution Center: 3521 Woods Way, State Farm, VA 23160. (Attachments: # 1 Envelope) (JSR) (Entered: 12/06/2022) |

AA-102

Case: 23-2478      Document: 28      Filed: 03/22/2024      Pages: 105

| | | |
|---|---|---|
| 12/06/2022 | 118 | Updated docket so name of prison will print to mailing label. Resent dkt 116 to KEVIN JOHNSON at SUSSUX 1 STATE PRISON. (MEH) (Entered: 12/06/2022) |
| 12/27/2022 | 120 | Mail Returned as undeliverable, refused, unable to forward 115 Notice (Other) sent to KEVIN JOHNSON. (JDC) (Entered: 12/27/2022) |
| 01/19/2023 | 121 | Order Denying Motions for Summary Judgment Without Prejudice and Directing Further Proceedings - The defendants' motions for summary judgment, dkt. 94 , dkt. 105 , are denied without prejudice. The defendants shall have fourteen days to refile their motions and re-serve them on Mr. Johnson at the address in the Distribution of this Order. Mr. Johnson will have 28 days after service of those motions to respond. In addition, if the defendants receive notification that the motions were not delivered to Mr. Johnson, they shall notify the Court. Finally, in the future, if Mr. Johnson wishes to request that the Court take some action in this case, he is encouraged to file a Motion rather than a Notice. (See Order.) Signed by Judge Jane Magnus-Stinson on 1/19/2023. Copy to Plaintiff via US mail. (JSR) (Entered: 01/19/2023) |
| 01/19/2023 | 122 | MOTION for Summary Judgment , filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C. (Attachments: # 1 Text of Proposed Order)(Shores-Scisney, Sarah) (Entered: 01/19/2023) |
| 01/19/2023 | 123 | BRIEF/MEMORANDUM in Support re 122 MOTION for Summary Judgment , filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C. (Shores-Scisney, Sarah) (Entered: 01/19/2023) |
| 01/19/2023 | 124 | Designation of Evidence re 123 Brief/Memorandum in Support , filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C. (Attachments: # 1 Exhibit A - Affidavit of Gregg Noll, DDS (Executed 5.27.2022), # 2 Exhibit B - Dental Records, # 3 Exhibit C - Medical Records (Redacted), # 4 Exhibit D - Affidavit of Ciemone Easter-Rose, PhD HSPP (Executed) (05-27-2022), # 5 Exhibit E - HSDC 4.03A - Adult MH Services 5-1-2019, # 6 Exhibit F - Mental Health Services Consent for Treatment, # 7 Exhibit G - IDOC HCSD 1.13A - Privacy of Care 1-1-2018, # 8 Exhibit H - Deposition Transcript of Kevin Johnson [94-1] (02-07-2022))(Shores-Scisney, Sarah) (Entered: 01/19/2023) |
| 01/19/2023 | 125 | NOTICE *of Right to Reply*, filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C, re 122 MOTION for Summary Judgment . (Shores-Scisney, Sarah) (Entered: 01/19/2023) |
| 01/31/2023 | 126 | MOTION for Summary Judgment , filed by Defendants ROBERT CARTER, DUSHAN ZATECKY. (Attachments: # 1 Exhibit A. The Deposition of Kevin Johnson, # 2 Exhibit B. The Declaration of Robert Carter, Jr., # 3 Exhibit C. The Declaration of Dushan Zatecky, # 4 Exhibit D. Johnson's Grievance Records)(Sawyer, Erica) (Entered: 01/31/2023) |
| 01/31/2023 | 127 | BRIEF/MEMORANDUM in Support *of Motion for Summary Judgment*, re 126 MOTION for Summary Judgment , filed by Defendants ROBERT CARTER, DUSHAN ZATECKY. (Sawyer, Erica) (Entered: 01/31/2023) |
| 01/31/2023 | 128 | NOTICE *Regarding Right to Respond To and Submit Evidence In Opposition to Motion for Summary Judgment*, filed by Defendants ROBERT CARTER, DUSHAN ZATECKY, re 126 MOTION for Summary Judgment . (Sawyer, Erica) (Entered: 01/31/2023) |
| 06/22/2023 | 129 | ORDER granting 122 Motion for Summary Judgment; granting 126 Motion for Summary Judgment. Final judgment consistent with this Order shall now issue. ***SEE ORDER*** (Copy to Plaintiff via U.S. mail). Signed by Judge Jane Magnus-Stinson on 6/22/2023. (JDC) (Entered: 06/22/2023) |

AA-103

Case: 23-2478          Document: 28          Filed: 03/22/2024          Pages: 105

| 06/22/2023 | 130 | CLOSED JUDGMENT - The Court now enters FINAL JUDGMENT. Judgment is entered in favor of the defendant. The plaintiff shall take nothing by his complaint and this action is terminated. (Copy to Plaintiff via U.S. mail). Signed by Judge Jane Magnus-Stinson on 6/22/2023.(JDC) (Entered: 06/22/2023) |
|---|---|---|
| 07/10/2023 | 131 | CERTIFICATE OF SERVICE by KEVIN JOHNSON (KAA) (Entered: 07/13/2023) |
| 07/10/2023 | 132 | MOTION for Contempt Proceedings and Court Intervention, filed by Plaintiff KEVIN JOHNSON. (KAA) (Entered: 07/13/2023) |
| 07/17/2023 | 133 | MOTION for Contempt Proceedings and Court Intervention, filed by Plaintiff KEVIN JOHNSON. (DWH) (Entered: 07/18/2023) |
| 07/17/2023 | 134 | MOTION to Vacate 130 Closed Judgment, 129 Order on Motion for Summary Judgment, filed by Plaintiff KEVIN JOHNSON. (DWH) (Entered: 07/18/2023) |
| 07/27/2023 | 135 | NOTICE OF APPEAL as to 129 Order on Motion for Summary Judgment, 130 Closed Judgment, filed by Plaintiff KEVIN JOHNSON. (No fee paid with this filing) (Attachments: # 1 Envelope)(LF) (Entered: 07/28/2023) |
| 07/28/2023 | 136 | PARTIES' SHORT RECORD re 135 Notice of Appeal - **Instructions for Attorneys/Parties attached.** (Copy mailed to Plaintiff.) (LBT) (Entered: 07/28/2023) |
| 07/28/2023 | 137 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 135 Notice of Appeal. **- for Court of Appeals Use Only.** (LBT) (Entered: 07/28/2023) |
| 07/31/2023 | 138 | RESPONSE in Opposition re 134 MOTION to Vacate 130 Closed Judgment, 129 Order on Motion for Summary Judgment , filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C. (Shores-Scisney, Sarah) (Entered: 07/31/2023) |
| 07/31/2023 | 139 | USCA Case Number 23-2478 for 135 Notice of Appeal filed by KEVIN JOHNSON. (Attachments: # 1 PLRA Fee Notice)(LF) (Entered: 07/31/2023) |
| 07/31/2023 | 140 | RESPONSE in Opposition re 134 MOTION to Vacate 130 Closed Judgment, 129 Order on Motion for Summary Judgment , filed by Defendants ROBERT CARTER, DUSHAN ZATECKY. (Sawyer, Erica) (Entered: 07/31/2023) |
| 08/31/2023 | 141 | MOTION to Proceed on Appeal in forma pauperis, filed by Plaintiff KEVIN JOHNSON. (Attachments: # 1 Exhibit, # 2 Envelope)(JRB) (Entered: 08/31/2023) |
| 09/13/2023 | 142 | MOTION to Withdraw Attorney Appearance *of Sarah J. Shores-Scisney*, filed by Defendants EASTER-ROSE, D. INGALLS, NOLL, NORTHCUTT, MARTIN PURDUE, WEXFORD OF INDIANA L.C.C. (Attachments: # 1 Text of Proposed Order)(Shores-Scisney, Sarah) (Entered: 09/13/2023) |
| 09/18/2023 | 143 | ORDER granting 142 Motion to Withdraw Attorney Appearance. Attorney Sarah Jean Shores-Scisney withdrawn. Copy sent to Plaintiff via US Mail. Signed by Magistrate Judge Mario Garcia on 9/18/2023. (JRB) (Entered: 09/18/2023) |
| 10/02/2023 | 144 | ORDER denying 134 MOTION to Vacate 130 Closed Judgment, 129 Order on Motion for Summary Judgment: Because Mr. Johnson has identified no error in the Court's order granting the defendants' motions for summary judgment, his motion to vacate, dkt. 134 , is DENIED. See Order. Signed by Judge Jane Magnus-Stinson on 10/2/2023.(Copy sent to Plaintiff via US Mail.) (LF) (Entered: 10/02/2023) |
| 10/02/2023 | 145 | Order Denying Motions for Contempt Proceedings: Mr. Johnson's motions for contempt proceedings, dkt. 132 , and dkt. 133 , are DENIED. See Order for complete details. |

AA-104

Case: 23-2478     Document: 28     Filed: 03/22/2024     Pages: 105

| | | Signed by Judge Jane Magnus-Stinson on 10/2/2023.(Copy sent to Plaintiff via US Mail.) (LF) (Entered: 10/02/2023) |
|---|---|---|
| 10/02/2023 | 146 | Order Discussing Request to Proceed on Appeal In Forma Pauperis: Accordingly, his appeal is not taken in good faith, and for this reason his request for leave to proceed on appeal in forma pauperis, dkt. 141 , is denied. See Order for details. Signed by Judge Jane Magnus-Stinson on 10/2/2023.(Copy sent to Plaintiff via US Mail.) (LF) (Entered: 10/02/2023) |
| 12/01/2023 | 147 | MANDATE of USCA as to 135 Notice of Appeal filed by KEVIN JOHNSON (USCA #23-2478) - IT IS ORDERED that this appeal is DISMISSED for failure to pay the required docketing fee pursuant to Circuit Rule 3(b). IT IS FURTHER ORDERED that the appellant pay the appellate fee of $505.00 to the clerk of the district court. The clerk of the district court shall collect the appellate fees from the prisoner's trust fund account using the mechanism of Section 1915(b). Newlin v. Helman, 123 F.3d 429, 433 (7th Cir. 1997). (LBT) (Entered: 12/01/2023) |
| 12/18/2023 | 148 | USCA Appeal Fees received $ 605 receipt number 8275 re 135 Notice of Appeal filed by KEVIN JOHNSON (USCA #23-2478) (CCG) (Entered: 12/18/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/22/2024 15:30:59 | | |
| **PACER Login:** | DDangaranRBB | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-00201-JMS-MG |
| **Billable Pages:** | 12 | **Cost:** | 1.20 |

AA-105